251 S.W.2d 601 (1952)
HENSON et ux.
v.
JASINSKY.
No. 42860.
Supreme Court of Missouri Division No. 1.
September 8, 1952.
Rehearing Denied October 13, 1952.
*602 C. L. Snodgrass, Tuscumbia, Harry H. Kay, Eldon, for appellants.
Hendren & Andrae, Jefferson City, for respondent.
LOZIER, Commissioner.
Plaintiffs-appellants (herein called plaintiffs) sued defendant (herein called Jasinsky) for $8,000 damages for the death of Leslie Henson (herein called Henson), plaintiffs' sixteen year old son. Plaintiffs appeal from the judgment entered upon the verdict for defendant.
Plaintiffs allege that two of Jasinsky's given instructions: Improperly defined "the highest degree of care"; assumed material controverted facts and issues; predicated Henson's contributory negligence upon "general negligence"; and did not require a finding that Henson's contributory negligence was a proximate cause of his death.
U. S. Highway 54 passes through Mt. Carmel, in Miller County, several miles south of Eldon. South of Mt. Carmel, the highway curves southeasterly and then runs straight south. The curve is "a very slight", "a very small" or "a sort of medium curve." On April 16, 1950, Jasinsky, accompanied by Henson and Walter Johnson, was driving south. Jasinsky and Johnson had been drinking; Henson had not. On the curve, the right rear tire went flat. Jasinsky pulled off the pavement and the three started to change tires. The car fell off the jack twice and each time Jasinsky drove the car forward. In the second move, he drove the car on the pavement and stopped it with its left wheels about 3' 6" from the pavement's west edge; it was then about 200 yards south of the southeast end of the curve. Jasinsky pointed a spotlight (located on the car's left front door post) rearward to warn southbound traffic and downward to furnish light for the tire changing operation. Jasinsky was taking off the right rear fender skirt. Henson was working with the jack "within a foot or two of the right-hand side of the car," or "behind the right rear part of the car" or "right behind the jack." Johnson had walked back to get the spare tire, then on the shoulder about 10' to the car's rear. Jasinsky and Johnson heard a car coming from the north. "It sounded like an express train." As it came around the curve, its lights were visible and its carburetor air intake and tires were "screaming." Jasinsky said: "Here comes one that is really movingget back out of the way," and took one step backward. Johnson, 10' away, heard the warning. Henson was an arm's length from Jasinsky and there was nothing wrong with Henson's hearing. According to Johnson, Henson "got up, looked around and sat back down; he got up, twisted his head and seemed like he hunkered back down." According to Jasinsky, Henson "stood up *603 about the same time as I did to look at the car," and then "started stooping down to monkey with the jack"; and Henson "had to move only one or two steps to where he (Jasinsky) was standing in order to assume a position of safety. * * * Several seconds, three or four, three or four or five," elapsed after the warning was given and before the other car ran into Jasinsky's. "It wasn't a square hit"; the left front of the other car struck the center rear of Jasinsky's car at an angle. Jasinsky's car was knocked 113' and the other car came to rest 16' behind Jasinsky's. Henson was knocked into the highway ditch and killed.
Lloyd Snellings (herein usually called Snellings), the owner and driver of the other car, testified for plaintiffs. With him that night were his brother, Floyd Snellings, and Eli McCowell. The three had been drinking. Lloyd Snellings testified that he was not blinded by the light from the spotlight when he first saw it, did not see the car on which the light was or its tail lights, "never did see the outline of the car and did not know which side of the car the light was on"; he thought that it "was a car coming toward me on my side," and swerved to his left. His brakes were good; he did not apply them or slow down; he could have stopped in 200 yards. He never saw the Jasinsky car before the collision. He twice said that he was traveling about 45 to 50 m.p.h. He also said that: his car would "go near 60" m.p.h., his car "wouldn't run faster than that; he wasn't going that fast" on that occasion, though he had his car "pretty near wide open." Other testimony of Lloyd Snellings is hereinafter mentioned.
Floyd Snellings and Eli McCowell (also plaintiffs' witnesses) said they both were riding in the front seat with Lloyd Snellings. Floyd Snellings saw the light "as they came around the curve" and it blinded him. He saw the tail lights of the Jasinsky car but did not see the car itself until the Snellings car was about 20'-25' away. Floyd Snellings said that he "did not know how fast Lloyd was traveling at the time he hit the car"; and, in his deposition, he stated that Lloyd "could have been traveling a little faster than he (Lloyd) thought he was. * * * I know what the car would do; it wouldn't do but 62" m.p.h.; "I don't know how fast he was driving but I'd say he was doing around 55" m.p.h.; "he was just a few miles from being wide open." McCowell saw the light but did not know how far away they were when he first saw it; it did not blind him as he did not look directly at it; he saw the other car's tail lights, and "could tell it was a car when he was probably 50 or 60 feet from it."
Plaintiffs pleaded and submitted Jasinsky's negligence in failing to park his car with its right side as near the right-hand side of the highway as practicable, and in causing the spotlight to blind Snellings. Jasinsky pleaded and submitted Henson's contributory negligence in failing, after Jasinsky's warning, to remove himself from a position of danger; and Snellings' negligence as the sole cause of the casualty.
Plaintiffs challenge Instruction D-5 and D-4. Our consideration of and rulings as to these instructions will be limited to plaintiffs' assignments of error.
Plaintiffs criticize the first paragraph of Instruction D-5 which is: "The court instructs the jury that it is the duty of the driver of an automobile at all times to drive the same with the highest degree of care which a very careful and prudent person would exercise under the same or similar circumstances." We agree that the paragraph does not contain a technical definition of the "highest degree of care." But plaintiffs offered no instruction containing a definition of that term. Such was their duty if they felt that a definition was necessary. See Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, 250. And plaintiffs do not now suggest how the jury could have been led to believe that the "highest degree of care" was any degree of care other than that "which a very careful and prudent person would exercise under the same or similar circumstances."
Plaintiffs assert that the paragraph does not require that care which a very careful and prudent person would ordinarily exercise under the same or similar circumstances. In Eller v. Crowell, Mo. *604 Sup., 238 S.W.2d 310, 315, we said: "The omission of the word `ordinarily' would not seem to be of any consequence." This assignment is overruled.
The remaining paragraph of Instruction D-5 is: "You are further instructed that if you find and believe from the evidence in this case that Lloyd Snellings, the driver of the Chevrolet which collided with the automobile of defendant in the early morning of April 16, 1950, at a point approximately one-half mile south of the Mt. Carmel Church on U. S. Highway 54, having seen the spotlight on defendant's automobile when he rounded the curve to the north, at a point at least two hundred yards from the point of collision with defendant's automobile, then failed to discover the position of defendant's automobile, then stopped on the right-hand side of said highway and the position of the deceased to the immediate rear thereof, until he was approximately twenty-five feet from defendant's automobile and the deceased, and in so doing failed to keep a reasonably sufficient lookout for others and was thereby negligent; or Snellings, having seen the spotlight on defendant's automobile when he rounded the curve to the north at a point at least two hundred yards from the point of collision with defendant's automobile where it was stopped on the righthand side of said highway, failed to stop or swerve his automobile in time to prevent it from colliding with defendant's automobile and striking deceased with a great deal of force, and in so doing failed to keep his automobile under control and was thereby negligent; or Snellings, having seen the spotlight on defendant's automobile at a point at least two hundred yards from the point of collision with defendant's automobile, and being confused as to the position of defendant's automobile but believing it to be on his, Snellings', side of the road, but not knowing whether it was parked or approaching him, still continued to drive his automobile in the nighttime along a well-traveled highway at a rate of speed of from fifty to fifty-five miles per hour, without slowing down, and in so acting drove his automobile at a high and dangerous rate of speed under the circumstances and was thereby negligent; and that in any of such particulars, if any of them you so find from the evidence, the driver of the Chevrolet, Snellings, failed to exercise the highest degree of care; and, if you so find, if you further find and believe from the evidence that any of such acts of the driver of the Chevrolet automobile, if any, was the sole cause of the collision mentioned in evidence, and that the defendant was not guilty of negligence as submitted in other instructions herein, then your verdict must be for the defendant." (Our italics.)
Plaintiffs say that Instruction D-5 assumed that: Snellings saw the light at least 200 yards from the point of collision, that Henson's position was to the immediate rear of the Jasinsky car and that the Snellings car struck Henson with a great deal of force. The latter two, if assumptions, were not of material controverted facts. The submission as to Snellings' failure to keep a lookout was failure to discover, not Henson, but the position of the other car. And, it being undisputed that Henson's death was caused by "the collision," there was no issue as to which car struck him or with what force. Hence, these alleged assumptions were as to immaterial matters and were so much surplusage. See Dohring v. Kansas City, Mo. Sup., 81 S.W.2d 943, 947; Capps v. Beene, Mo.App., 162 S.W.2d 80, 81. "The assumption of a fact which is not a material one may be disregarded." 64 C.J., Trial, Sec. 483, p. 535.
We do not believe that Instruction D-5 was confusing or misleading. See Young v. Missouri-Kansas-Texas R. Co., Mo.Sup., 100 S.W.2d 929, 935; Bloch v. Kinder, 338 Mo. 1099, 93 S.W.2d 932, 933-934. In the instruction, the alleged factual assumptions and the factual hypotheses are both preceded by an initial "if you find and believe from the evidence"; and they are all followed by an "if you so find" and by the "sole cause" submission expressly predicated upon "if you further find and believe from the evidence that any of such acts" of Jasinsky, "if any," etc. "It is also held that where an instruction commences `If you find and believe from *605 the evidence,' and then, after stating certain facts, even in a way which seems to assume them, if the instruction follows this recital with the requirement `if you so find,' a finding of those facts is required by the jury." Lewis v. Illinois Central R. Co., Mo. Sup., 50 S.W.2d 122, 125.
Technically construed, Instruction D-5 seems to assume that Snellings first saw the light at least 200 yards from the point of collision. (Snellings so testified. While he made various estimates of the distance, he specifically said he first saw the light at Point A on the photo-exhibits, which point was concededly over 200 yards from the point of collision.) But we believe that, despite its inapt language, the instruction requires the jury to find the facts apparently assumed. Read in its entirety, it required the jury to find every fact essential to a finding of Snellings' negligence as the sole cause of the collision. Essentially, the instruction was: "If you find from the evidence that Snellings failed to discover defendant's automobile after he had seen the spotlight when he was at least 200 yards away; or if you find that Snellings failed to stop or swerve his automobile in time to prevent its colliding with defendant's automobile after he had seen the spotlight when he was at least 200 yards away; or if you find that Snellings continued to drive his automobile at a rate of speed of 50-55 m. p. h. after he had seen the spotlight when he was at least 200 yards away; and that such failure to discover defendant's automobile or such failure to stop or to swerve or such driving at 50-55 m. p. h. was the sole cause of the collision," etc. We do not believe that the jury would not so understand the instruction; or that they would find that, after Snellings saw the light at least 200 yards away, he failed to discover Jasinsky's automobile or to stop or to swerve or continued to drive 50-55 m. p. h. without also finding that he did see the light at least 200 yards away. See Sollars v. Atchison, Topeka & Santa Fe R. Co., 239 Mo. App. 410, 187 S.W.2d 513, and cases discussed therein.
Plaintiff also contends that the alleged assumption in Instruction D-5 as to Snellings' "confusion" (as to the position of defendant's automobile) was contrary to the evidence; that Snellings' testimony was that "he knew it was on his side of the highway all the time but there was nothing said about whether he knew it was parked or approaching him." The awkward language as to Snellings' "confusion" involved no material fact or controverted issue.
Plaintiffs say that Instruction D-5 both assumed that Snellings was driving at from 50-55 m. p. h. and that there was no evidence of that speed. However, in the instruction, Snellings' speed was hypothesized, not assumed. And there was evidence upon which to base that hypothesis. Snellings said he was going 45 to 50 m. p. h.; he did not deny he was going 55; he said his car would go 60 and he "had it pretty near wide open." Floyd Snellings once estimated his brother's speed as "around 55" m. p. h.
Instruction D-4 is: "You are instructed that a minor can be guilty of contributory negligence. Whether or not a minor is guilty of contributory negligence depends upon the age, his capacity, his intelligence and experience and the circumstances under which the minor acted. Therefore, if you find and believe from the evidence that at a point approximately one-half mile south of the Mt. Carmel Church on U. S. Highway 54, in the early morning of April 16, 1950, the plaintiffs' son, in the exercise of that degree of care common to youths of his age and capacity, could have known that it was dangerous for him to remain at the right rear end of defendant's motor car, if so, taking into consideration that it was nighttime, that he had knowledge of a car approaching from his rear at a high rate of speed, if so, that he knew the position of defendant's vehicle with respect to the pavement and shoulder, if so, that he knew that the spotlight on defendant's car was lit and was pointed back toward overtaking traffic, if so, that he was on a much traveled highway, that he had a warning from defendant to move himself from his position behind defendant's vehicle, if so, that he had the means and the time to remove himself from such position, if so, and that *606 he failed to do so, if so, and if you further find that the failure of plaintiff's son to exercise such care was negligence, and that such negligence, if any, contributed to his death, then your verdict should be for the defendant." (Our italics.)
Plaintiffs say that Instruction D-4 assumed that Henson remained at the right rear end of the Jasinsky car, that the Snellings car was approaching at a high rate of speed; and that if Henson had removed himself from his position he would not have been killed. However, Instruction D-4 hypothesizes those facts; the hypotheses are predicated upon an initial "if you find and believe from the evidence"; and each hypothesis is followed by an "if so." Hence, the instruction does not assume facts. Willard v. Robertson, Mo.Sup., 129 S.W.2d 911, 914.
Plaintiffs say that Instruction D-4 is "confusing and misleading in that it contains the words `if so' seven different times in one sentence and in such places as to make it impossible to determine what the jury was required to find." "While, the giving of too many `if so's' has been criticized, it has not been held to amount to reversible error." Gilpin v. Aetna Life Ins. Co., 234 Mo.App. 566, 132 S.W.2d 686, 699. The "if so's" in Instruction D-4 could not have confused or misled the jury as to what facts it must find upon which to base a defendant's verdict because of Henson's contributory negligence.
There is no merit in plaintiffs' contention that Instruction D-4 submitted Henson's "general contributory negligence." The instruction expressly predicates Henson's contributory negligence upon a number of specific acts or omissions on his part.
Plaintiffs contend that Instruction D-4 "allows the jury to find deceased guilty of contributory negligence however remote or vague it may have been and did not require that deceased's negligence, if any, directly or proximately contributed to his death." They cite Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S. W.2d 223, 227, wherein we said of contributory negligence: "The negligence of plaintiff must have been a proximate cause, that is, a `proximate cause' as the term is used in expressing a cause which may be reasonably regarded as a direct, producing or efficient cause; or as entering into and forming a part of the direct, producing or efficient cause of the injury." In that case, as instant plaintiffs concede, this court recognized an exception to this rule, the exception being a case where the jury is required to find negligent acts "which, in the nature of things, necessarily contributed directly to cause the injury and necessarily formed a part of the efficient cause thereof". 189 S.W.2d loc. cit. 228.
Plaintiffs argue, however, that the exception does not apply here because: If the jury found that Henson was negligent in not removing himself from his position in the rear of the Jasinsky car, "it does not necessarily follow that his failure to change his position directly contributed to his death. He might have changed his position and still been hit." The instruction does not predicate Henson's contributory negligence upon a mere "change" of position. On the contrary, it predicates negligence upon his failure, after Jasinsky's warning, to "remove" himself, from the previously hypothesized position of danger, and requires a finding that such negligence contributed to his death. We rule that Instruction D-4 properly submitted proximate cause under the exception recognized and discussed in Stumpf v. Panhandle Eastern Pipeline Co., supra.
As stated, we limit our rulings as to the propriety of Instructions D-5 and D-4 to plaintiffs' assignments of error therein. As Jasinsky concedes in his brief, the instructions are "not models." We do not recommend their use.
The judgment is affirmed.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
CONKLING, HOLLINGSWORTH and DALTON, JJ., concur.
HYDE, P. J., concurs in result.