Leon Jack BARNETT, Jr., a minor, By and Through his next friend and natural guardian Della BARNETT, Plaintiff-Appellant,

v.

EQUALITY SAVINGS & LOAN ASSOCIATION INC., a corporation, and Charter Development Company, a corporation, and Coffelt Paving Company, Defendants-Respondents.

No. 46300.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 27, 1983.

L. Steven Goldblatt, St. Louis, for plaintiff-appellant.

E. Thomas Liese, Robert C. Ely, Donald L. James, St. Louis, for defendants-respondents.

REINHARD, Judge.

Plaintiff, a minor, sought damages by next friend in his second amended petition for personal injuries. Plaintiff's suit was brought under the trespassing child doctrine (formerly attractive nuisance). The court granted a directed verdict in favor of defendant Charter Development Company at the close of evidence; the jury rendered a verdict in favor of the remaining defendants. Plaintiff appeals from judgments entered in favor of defendants Equality Savings & Loan and Charter Development Company; there is no appeal from the judgment in favor of Coffelt Paving Company. We affirm.

Plaintiff, then age 8, was injured while playing ball with friends in an alley behind defendant Equality Savings and Loan's (hereafter Equality) building. The children's ball landed on Equality's property; plaintiff followed to retrieve it. Plaintiff climbed a stack of approximately 20 cement

"bumper blocks" used in parking lots to delineate parking spaces, so that he could then scale a fence which enclosed a staircase at the rear of the Equality building and retrieve his ball. When plaintiff climbed back over the fence to resume his play, he again stepped on the bumper blocks, one of which fell and crushed his foot.

At the time of the accident, Equality was having maintenance work done on its parking lot. For a fixed fee, Equality had hired defendant Charter Development Company (hereafter Charter), to solicit bids for the work, go over the bids with contractors, select a contractor and inspect its work before payment.

Charter, in turn, had solicited bids and entered into an agreement with defendant Coffelt Paving Company (hereafter Coffelt) on behalf of Equality to perform the needed paving work. In order to pave the lot, bumper blocks were removed and stacked near the fence by Coffelt employees under a Coffelt foreman's supervision. At the time of the accident, the lot had been paved, however the blocks had not yet been repositioned.

At trial, various witnesses testified that the blocks were placed in a tier-like fashion. Plaintiff's cousin and playmate, Larry Fox, testified that they were messy and criss-crossed. He also identified a photograph of the blocks, however, as being no more messy than at the time of the accident; the photograph showed the blocks in a pile somewhat resembling steps. There was also testimony as to the safety precautions taken surrounding the blocks. There was no fencing, ropes, or similar precautions taken to seal off the area. However, testimony from Erwin Ebersole, an Equality employee, and both plaintiff and his cousin during cross examination, indicates that barricades with flashing yellow lights were placed around the stack.

In his first point, plaintiff contends that the trial court erred in refusing to allow plaintiff's counsel in closing argument to draw an adverse inference from the failure of Equality to call employee Vicky Zeltman as a witness.

The failure to call a witness having knowledge of facts and circumstances vital to the case generally raises a presumption that the testimony would be unfavorable to the party failing to proffer it. *Leehy v. Supreme Express & Transfer Co.,* 646 S.W.2d 786, 790 (Mo.banc 1983). However, it is improper for a party to raise a negative inference in argument based on a party's failure to call a witness that is equally available to both sides. *Hill v. Boles,* 583 S.W.2d 141, 143 (Mo.banc 1979). There is a presumption that an employee is more available to an employer than to the opposing party, and accordingly a negative inference arises from the failure of an employer-party to produce an employee. *Leehy v. Supreme Express & Transfer Co.,* 646 S.W.2d at 790. However, this is not a hard and fast rule *Id.,* and in circumstances where the employee's non-produced evidence is corroborative or cumulative to other evidence, the negative inference may not be argued. *See Adam Hat Stores v. Kansas City,* 307 S.W.2d 36, 41 (Mo.App.1957).

Ms. Zeltman, a cleaning woman, was on the premises on the day of the accident; however there is nothing in the record to indicate whether she was indoors or outside when it occurred, nor whether she actually witnessed its occurrence. Rather the evidence only establishes that she emptied trash into the dumpster near the blocks shortly before the accident and scolded the children while they were inside the fenced area retrieving their ball.

Plaintiff called Erwin Ebersole, also an Equality employee, who was leaving the building via the back door at the time of the accident and who was an eyewitness from that vantage point. Concerning the plaintiff's conduct, Ebersole testified to seeing plaintiff in mid-air, apparently after jumping from the fence. Although he did not see the plaintiff land, due to the loca-

tion of the trash dumpster, he responded to the child's cries. He testified to plaintiff's position after his fall and that he lifted the blocks to free plaintiff's foot.

He furthermore testified that no ropes, fencing, construction tape or similar methods were used to seal off this area. However, two barricades with flashing lights were present around the stack of blocks.

In the record before us, there is nothing to indicate that Ms. Zeltman's evidence would have been anything other than corroborative or cumulative. Therefore, we rule this point against plaintiff.

In plaintiff's second point, he contends "[t]he Trial Court erred in dismissing Charter Development Company at the end of the evidence as there was substantial evidence that Charter was a general contractor and hence liable as if a possessor of land." [1]

There is little testimony in the record on the issue of Charter's role. There was no written contract between Equality and Charter and the contract with Coffelt, although admitted into evidence in the trial court, was never deposited with this court. See *Jo B. Gardner, Inc. v. Beanland*, 611 S.W.2d 317, 320 (Mo.App.1980).

■ However, in the present case it is unnecessary for us to determine whether plaintiff made a submissible case on the theory of Charter's general contractor status. Even if Charter was a general contractor, we conclude that in light of the jury's determination that neither Coffelt nor Equality was negligent, Charter cannot be deemed negligent, and thus, any error in

directing the verdict for Charter could not be prejudicial. The theory upon which this case was submitted was that, while work was under its charge, Charter, as general contractor, stood in the same shoes as the owner of the property, Equality, for the purpose of determining liability toward trespassing children. Specifically, plaintiff relies on Restatement (Second) of Torts § 384 (1965), cited with approval in *Guthrie v. Reliance Construction Co.*, 612 S.W.2d 366, 369 (Mo.App.1980); *Stoeppelman v. Hays-Fendler Construction Co.*, 437 S.W.2d 143, 148 (Mo.App.1968), which provides:

> One who *on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land,* for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

The liability of Charter, therefore, is no greater, nor less than that of Equality.[2] *Gruhalla v. George Moeller Construction Co.*, 391 S.W.2d 585, 596–97 (Mo.App.1965); Restatement (Second) of Torts § 384 (1965).

Plaintiff had his day in court to establish the liability of Equality under the trespassing child doctrine. By its verdict in favor of Equality, it is clear that the jury found the evidence unpersuasive. Since the owner did not create what is commonly known as an attractive nuisance, neither could Charter, who is treated as if he were the owner.

1. Charter contended that even if it was a general contractor, Coffelt was an independent contractor for whose acts Charter was not liable. We note that the president of Charter referred to his company's role as being responsible for securing a *subcontractor* to do paving work. Moreover, even were Coffelt an independent contractor, Charter holds the same duty as the possessor of land "even if the dangerous condition was caused by ... an independent contractor since the possessor of land will not be permitted to shift his responsibility to another." *Guthrie v. Reliance Construction Co.*, 612 S.W.2d 366, 369 (Mo.App.1980).

2. In *Stoeppelman v. Hays-Fendler Construction Co.*, 437 S.W.2d 143 (Mo.App.1968), the owner and contractor performing work on the owner's property both challenged the submissibility of the case against either after jury verdicts against both. However, the court significantly noted that all of defendant-contractor's argument was directed to the case against the owner, stating "this may be because defendants recognize the rule that defendant Hays-Fendler, the contractor, owed plaintiff the same duty as that of the owner." *Id.* at 148.

Moreover, no independent basis for Charter's liability was alleged and, even if it were, we can find no ground for liability against Charter not involving the conduct of the subcontractor responsible for stacking the blocks. Since the jury found Coffelt, the agent, not negligent, Charter, the principal, cannot be held liable. *See Jackson v. Haley*, 432 S.W.2d 281, 284 (Mo.1968); *Max v. Spaeth*, 349 S.W.2d 1, 3 (Mo.1961).

Affirmed.

KAROHL, P.J., and CRANDALL, J., concur.