**John WALSH, Plaintiff/Appellant,**

v.

**ST. LOUIS NATIONAL BASEBALL CLUB, INC., Defendant/Respondent.**

No. 59388.

Missouri Court of Appeals, Eastern District, Division Five.

Jan. 21, 1992.

---

Vatterott, Shaffar & Dolan, L. Joseph Garavaglia, St. Ann, for plaintiff/appellant.

Rabbitt, Pitzer & Snodgrass, Daniel T. Rabbitt, Robert D. Rowland, St. Louis, for defendant/respondent.

AHRENS, Judge.

Plaintiff, John Walsh, appeals from a judgment entered on a jury verdict in favor of defendant, St. Louis National Baseball Club, Inc., on plaintiff's petition for assault and false imprisonment.

On appeal, plaintiff claims the trial court erred in: (1) submitting defendant's affirmative defense instructions, because said instructions did not constitute an accurate statement of the law applicable to the case, in that they omitted the necessary element that plaintiff remained on defendant's premises without permission; (2) giving the aforementioned instructions, because there was no evidence that defendant requested plaintiff to leave the premises or gave plaintiff a reasonable opportunity to do so; (3) submitting said instructions, because "technical legal terms" were used without definition and because no ultimate facts were hypothesized for the jury's determination; (4) prohibiting plaintiff's counsel from commenting to the jury on defendant's failure to call witnesses from a list available to defendant; (5) refusing to submit plaintiff's punitive damage instructions, because the evidence supported a finding that defendant's agents acted with an evil motive; and (6) overruling plaintiff's best evidence objection to the testimony of a witness concerning the wording on a baseball game ticket. We affirm.

Viewed in a light most favorable to the verdict, the evidence at trial established the following facts. On June 28, 1983, plaintiff attended a doubleheader at Busch Memorial Stadium in St. Louis. Plaintiff brought a sign with him which read, "Trade Whitey" on one side, and "Who's on first?" on the other. Plaintiff held up the sign without incident several times during the first game. During the intermission between the first and second games, plaintiff moved from his usual seat to a seat on the first base side of the stadium, eight rows behind the Cardinals' dugout.

During the first inning of the second game, plaintiff resumed displaying the sign over his head. At that time, an usher, Gretchen Connerly, came to plaintiff's seat and asked him to keep the sign down. Plaintiff complied for two innings, but then displayed the sign. Ms. Connerly went to plaintiff's seat three to five times and asked him to keep the sign down; she asked to see plaintiff's ticket, and plaintiff threatened her. Debris was thrown in plaintiff's direction when he displayed the sign.

Ms. Connerly requested the assistance of her supervisor, Milton Ochs. Mr. Ochs asked plaintiff to keep the sign down because it was obstructing the view of other fans and causing a disturbance. Mr. Ochs did not recall plaintiff's response.

Because Ms. Connerly saw plaintiff display the sign again after Mr. Ochs left, she asked Dave Zeugin, a fellow usher, to speak with plaintiff. Dave Zeugin told plaintiff that he would hold the sign, and that plaintiff could pick it up after the game. Plaintiff refused to relinquish the sign and told Mr. Zeugin to "get someone with more authority." Mr. Zeugin left and returned with four other ushers.

Wayne Zeugin, Dave Zeugin's father and Chief of Service for St. Louis Usher Service, told plaintiff the sign was causing a problem and that ushers had received complaints from fans. Plaintiff was agitated and argumentative. When plaintiff refused to surrender the sign, Wayne Zeugin summoned off-duty police officers employed by the Cardinals. Wayne Zeugin testified that before the police arrived, plaintiff stood and proceeded up the aisle in

front of the ushers, who then walked plaintiff to the center doors at the back of the seating area and through a lobby to a main street. Plaintiff testified that ushers grabbed him by the arms and led him to the top of the aisle. Once outside the stadium, plaintiff was searched and handcuffed by the police.

In his first three points on appeal, plaintiff raises instructional error, contending the trial court erred in submitting and giving defendant's affirmative defense instructions.

As an affirmative defense instruction to plaintiff's assault verdict director, defendant submitted Instruction 10, a modification of MAI 32.09 [1969 New] [1]:

> Your verdict must be for defendant if you believe:
>
> First, defendant had reasonable cause to revoke plaintiff's license, and
>
> Second, plaintiff's license to remain on the defendant's premises was revoked, and
>
> Third, the ushers or security personnel used only such force as was reasonable and necessary to remove plaintiff from the premises.

Defendant also submitted Instruction 14, a modification of MAI 32.13 [1978 Revision], [2] as an affirmative defense instruction to plaintiff's false imprisonment verdict director:

> Your verdict must be for defendant if you believe:
>
> First, defendant had reasonable cause to revoke plaintiff's license, and
>
> Second, plaintiff's license to remain on defendant's premises was revoked, and
>
> Third, the restraint of the plaintiff was made in a reasonable manner for the

purpose of removing plaintiff from the premises.

Initially, we note that plaintiff did not object at trial to the affirmative defense instructions submitted by defendant. If plaintiff had entered a specific objection at trial, a general assertion in his motion for new trial would be sufficient to preserve the point for our review. *Salamy v. State Farm Fire and Casualty Co.*, 629 S.W.2d 653, 654 (Mo.App.1982). However, since no such objection was made, plaintiff's motion for new trial must contain specific objections to defendant's instructions. *Id.;* Rules 70.03 and 78.07. In the motion, the allegations of error should be sufficiently definite to direct the trial court's attention to the particular acts or rulings asserted to be erroneous, so that the court may have one last opportunity to correct any error without the delay, expense, or hardships of an appeal. *Skelton v. General Candy Co.*, 539 S.W.2d 605, 610 (Mo.App.1976).

Plaintiff's motion for new trial states in pertinent part:

1. The Court prejudicially erred in giving, at the request of Defendant, Defendant's Affirmative Defense Instruction Nos. 10 and 14, because:

(a) There was no evidence to support the submission of Paragraph Second of Instruction No. 10 and Paragraphs Second and Third of Instruction No. 14;

(b) Paragraph Second of Instruction No. 10 and Paragraphs Second and Third of Instruction No. 14 are not supported by sufficient evidence to permit the jury to make a finding thereunder;

(c) Said instructions constitute a roving commission particularly by the use of the words *"Plaintiff's license to remain*

---

**1.** MAI 32.09 provides:

Your verdict must be for defendant if you believe:
First, plaintiff [was] [remained] on defendant's premises without permission, and
Second, defendant by (*here insert defensive measures such as "striking" "shoving"*) (emphasis original) plaintiff, used only such force as was reasonable and necessary to remove plaintiff from the premises.

**2.** MAI 32.13 states:

Your verdict must be for defendant if you believe:
First, defendant was engaged in mercantile trade, and
Second, defendant had reasonable cause to believe that plaintiff wrongfully had taken or was taking merchandise or money, and
Third, plaintiff's restraint was made in a reasonable manner and for a reasonable length of time for the purpose of investigation.

*on the Defendant's premises was revoked"* (emphasis original), in that they permitted the jury to find against Plaintiff for any circumstances they [sic] might decide constituted a revocation of Plaintiff's license, or, for that matter, for any circumstances they [sic] might decide constituted a *"license"* (emphasis original);

(d) Said Instructions are not authorized by the Missouri Supreme Court, and do not constitute an accurate statement of the law applicable to the case.

The objection stated in paragraph 1(c) and set forth in plaintiff's third point is made with adequate specificity to preserve that claim of error for our review. However, the objections stated in paragraphs 1(a) and 1(b) are inadequate to preserve the objection upon which plaintiff's second point is based. Although plaintiff in his motion states generally that the evidence was insufficient to support paragraph second of Instruction 10 [3] and paragraphs second and third of Instruction 14, he makes his specific claim of insufficiency for the first time on appeal: that there was no evidence that plaintiff's license was revoked, in that no one told or asked him to leave, warned him he might have to leave, or gave him the opportunity to do so. Similarly, paragraph 1(d) of plaintiff's motion is a general objection to defendant's affirmative defense instructions and does not specifically state the error claimed. Plaintiff first alleges specific error in his brief on appeal: the "instructions did not constitute an accurate statement of the law applicable to the case *in that they omit the necessary element that plaintiff remained on the defendant's premises without permission"* (emphasis added). Because plaintiff at trial failed to object to defendant's affirmative defense instructions, and because the objections in paragraphs 1(a), 1(b), and 1(d) of plaintiff's motion for new trial are general rather than specific, the claims presented in plaintiff's first and second points preserve nothing for our review.

**3.** Although plaintiff on appeal also claims error with respect to paragraph third of Instruction 10, he made no objection of any kind at trial or in his motion for new trial with respect to this

■ In his third point, plaintiff claims the trial court erred in giving defendant's affirmative defense instructions because they gave the jury a "roving commission" to determine whether plaintiff's license to remain on defendant's property was reasonably revoked. Specifically, plaintiff alleges error in the failure to define the terms "license" and "revoked." Plaintiff further contends that defendant's instructions failed to hypothesize ultimate facts for the jury's determination; however, plaintiff makes this claim for the first time on appeal. We consider only the definitional claim.

■ It is the duty of a party who contends that a word needs definition to offer an instruction containing a definition of the term. *Turner v. Norfolk & S. Ry.,* 785 S.W.2d 569, 574 (Mo.App.1990) (*citing Henson v. Jasinsky,* 251 S.W.2d 601, 603 (Mo.1952)). Further, a party's failure to request a definitional instruction prevents him or her from complaining on appeal of the failure to define a word in an instruction. *Id. (citing DeClue v. Murrell,* 717 S.W.2d 237, 240 (Mo.App.1986)).

Because plaintiff failed to offer instructions defining the words "license" and "revoked," he may not now complain of the trial court's failure to define those words in defendant's affirmative defense instructions. Point three is denied.

■ Plaintiff in his fourth point argues the trial court erred in prohibiting him from commenting on defendant's failure to call witnesses from a list of season ticket holders. Plaintiff contends defendant's failure to call witnesses from the list, which until 1990 was under defendant's exclusive control, raised an inference that the witnesses' testimony would have been unfavorable to defendant.

In 1984, plaintiff submitted an interrogatory asking defendant for a list of the persons holding season tickets for the several rows immediately surrounding plain-

paragraph. Therefore, plaintiff has failed to preserve for our review any claim of error with respect thereto.

tiff's seat at the time of the incident. The trial court sustained defendant's objection to providing a list, citing the "speculative nature of that circumstance as to what those ticket holders might or might not have developed for either side of the issue." Plaintiff attempted to obtain the same information in 1990, and, due to a change in policy, defendant opted to provide plaintiff with the list. However, attempts to locate witnesses at that time were fruitless.

■ Generally, a party's failure to call a witness who has knowledge of facts vital to the case raises a presumption that the witness would give testimony unfavorable to that party. *Barnett v. Equality Sav. and Loan Ass'n*, 662 S.W.2d 924, 926 (Mo. App.1983). However, if the witness is equally available to both sides, it is improper for a party to raise a negative inference based on the other party's failure to call the witness. *Id.*

We cannot say that the witnesses in this case were more available to defendant than to plaintiff. A witness' "availability" to a party depends upon "the party's superior means of knowledge of the existence and identity of the witness, the nature of the testimony that the witness would be expected to give and any relation to the party so as to make it natural that he will be expected to testify in favor of one." *Graeff v. Baptist Temple*, 576 S.W.2d 291, 306 (Mo.banc 1978). Until disclosure to plaintiff of the list of season ticket holders, defendant had superior means of knowing the identities of the witnesses. Upon disclosure, however, the witnesses became equally available to both parties. Further, at no time either prior or subsequent to disclosure did the nature of the witnesses' expected testimony or their relation to defendant indicate the testimony would necessarily favor one party over the other. Accordingly, we find no error in the trial court's refusal to permit plaintiff to raise a negative inference based on defendant's failure to call the season ticket holders as witnesses. Point four is denied.

■ In his fifth point, plaintiff claims the trial court erred in refusing to submit

his punitive damages instructions to the jury. Plaintiff argues there was evidence in the record sufficient to establish an evil motive on the part of defendant's agents at the time of the incident.

Since the jury found for defendant on both the assault and false imprisonment counts, it did not reach the issue of damages. "The rule is well established that when the jury's verdict demonstrates that it never reached the issue which is claimed to be the source of prejudice, then no prejudice has been demonstrated." *Black v. Cowan Constr. Co.*, 738 S.W.2d 617, 621 (Mo.App.1987). Therefore, any alleged error in refusing to submit the punitive damages instructions was immaterial. *Reece v. Missouri Delta Bank*, 710 S.W.2d 21, 23 (Mo.App.1986). Plaintiff's fifth point is without merit.

■ In his sixth and final point, plaintiff claims the trial court erred in permitting Bruce Schulze, formerly defendant's Assistant for Stadium Operations, to testify that the wording on a baseball game ticket from 1983 stated the ticket was a revocable license to enter defendant's premises. Plaintiff contends the trial court erred in overruling his best evidence objection, arguing that the best evidence of the wording on the ticket is the ticket itself. Specifically, plaintiff contends defendant failed to lay a proper foundation for admittance of Schulze's testimony by failing to offer proof that a ticket was unavailable after a proper search.

The transcript of the testimony reveals the following exchange:

Q. [Mr. Rabbitt, Defense Counsel]: Now, in 1983 when a person entered the stadium with a ticket did the ticket somewhere indicate on it that it was a license?

A. Yes, it did.

MR. GARAVAGLIA [Plaintiff's Counsel]: Judge, I object. First of all, the Best Evidence Rule requires the ticket to be produced.

Second of all, it calls for legal testimony on the part of the witness.

THE COURT: Sustained for lack of foundation.

Q. (By Mr. Rabbitt) Okay. Well, first of all, have you looked for a ticket for 1983?

A. No, I haven't.

Q. Okay. There aren't any around; are there?

A. No, not that—

MR. GARAVAGLIA: Go ahead.

A. Not that I am familiar with.

Q. (By Mr. Rabbitt) Are you familiar with the wording on the back of the ticket in 1983 as to what it says with respect to the word license?

A. Yes, I am.

Q. And what in 1983 did the ticket say with respect to that?

MR. GARAVAGLIA: Judge, I will still object. The best evidence would be the ticket for the Jury to read.

Secondly, as regarding license, that's a legal issue.

THE COURT: Well, overruled. He may answer if he knows.

A. The ticket stated that it was a license to enter the stadium. It was revokable [sic] upon the determination of the staff.

 Initially, we note that the trial court is vested with wide discretion in determining the sufficiency of a foundation for the introduction of secondary evidence. *Schnucks Twenty–Five, Inc. v. Bettendorf,* 595 S.W.2d 279, 284 (Mo.App.1979). Generally, a court may permit the introduction of secondary evidence if the offering party demonstrates the primary evidence is "lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible to him, or is voluminous or complicated." *Id.* at 283 (quoting 29 Am.Jur.2d, Evidence, § 459 (1967)). Further, the offering party is not required to prove the unavailability or nonexistence of the primary evidence "beyond the possibility of mistake." *Id.* (quoting *Western Inc. v. United States,* 234 F.2d 211, 213 (8th Cir. 1956)).

Schulze testified he was not familiar with the current existence of any baseball game tickets from 1983. We cannot say the trial court abused its discretion in determining that a sufficient foundation had been laid for the introduction of Schulze's further testimony concerning the wording on the tickets, based on Schulze's initial testimony, the length of time between the incident and the trial, and the source of the wording sought to be proved. The trial court could have reasonably believed a 1983 ticket was unavailable. Further, there was no dispute in this case that plaintiff's game ticket did in fact grant plaintiff a revocable license to enter defendant's premises; the dispute concerned whether and under what circumstances the license was revoked. Accordingly, we find no prejudicial error in the trial court's admission of Schulze's limited testimony. *See Eckner v. Western Hair & Beauty Supply Co.,* 162 S.W.2d 621, 627 (Mo.App.1942) (trial court committed no prejudicial error in overruling defendant's best evidence objection to plaintiff's testimony concerning the price of certain merchandise, since the amount of the order was not the real issue in the case). Plaintiff's sixth point is denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and SATZ, J., concur.