Nancy W. SEIDEL, Plaintiff/Respondent,

v.

GORDON A. GUNDAKER REAL ESTATE CO., INC., and Carol Hatridge, Defendants/Appellants.

No. 66209.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 13, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Louis J. Garavaglia, Jr., Vatterott, Shaffar & Dolan, St. Ann, for appellants.

Robert O'Neal, Riezman & Blitz, P.C., St. Louis, for respondent.

CRANE, Presiding Judge.

Defendants Gordon A. Gundaker Real Estate Co., Inc. (Gundaker) and Carol Hatridge, a real estate salesperson, appeal from a judgment entered on a jury verdict in favor of plaintiff Nancy W. Seidel for $27,500 on her First Amended Petition for intentionally failing to disclose that the sewers in the development in which she contracted to purchase a home had not been accepted by the Metropolitan St. Louis Sewer District (MSD). Defendants raise ten points on appeal. They assert the trial court erred in denying their motion for directed verdict, in denying their motion for judgment notwithstanding the verdict, in admitting evidence of the costs of defense and settlement of the owners' action against the buyer, and in giving certain jury instructions. We affirm.

## FACTUAL BACKGROUND

We view the evidence in the light most favorable to the verdict. Plaintiff was a licensed real estate broker. Defendant Hatridge was a licensed real estate salesperson associated with defendant Gundaker, a real estate broker.

Plaintiff first became aware of the listing of a home at 14334 Cedar Springs in the Cedar Springs subdivision, a planned unit development, while assisting clients in finding a house to purchase. Hatridge was the listing agent for the property which was under a listing contract with Gundaker, the listing broker. The homeowners, Theodore and Maria McGovern, rejected plaintiff's clients' offer to purchase the home. When plaintiff knew that her clients were no longer interested in the property, she began negotiating to purchase it for herself. The owners accepted her offer on August 2, 1989. Closing was finally scheduled for November 30, 1989.

On November 13, 1989 plaintiff first became aware of problems with the sewer system at the Cedar Springs subdivision from an article in the St. Louis Post–Dispatch which reported an action filed by the subdivision homeowners' association against the subdivision's developer for 1.4 million dollars. When the subdivision was constructed, the developer had built brick and tie walls which encroached on the sewer easements. As a result MSD had refused to accept public dedication of the sewer system. Accordingly, MSD would accept and treat the waste water from the subdivision properties, but it would not make any major repairs to the system. Therefore, any buyer of the property would have the potential costs of paying for repairs to the system, and the costs of tearing down and reconstructing the brick and tie walls which prevented access to the system.

Plaintiff testified that she was not aware of the sewer problems and would not have entered into the contract had she known of the problems. The multi-listing sheet for the property had listed the sewers as public, as did the Spahn sheet. Plaintiff testified that it was the listing agent's responsibility to complete the descriptions in the computer multi-listing sheet. Plaintiff testified that Hatridge did not inform her of the sewer situation during her negotiations. Plaintiff also testified that Hatridge had not informed

her of the sewer problems when her clients had been interested in the property.

Hatridge admitted that she did not tell plaintiff about the sewer problem prior to entering the sales contract. Hatridge also admitted that she did not tell plaintiff's clients about the problems prior to their offer. Hatridge admitted she prepared the Spahn sheet and listed the sewers as public. She also admitted that it was possible to place notice about the sewer problem in the "remarks" section of the listing. Hatridge testified that she had lived in the Cedar Springs subdivision since 1984 and was aware of the sewer problems at the time of plaintiff's offer. Hatridge admitted that she had informed other potential buyers of the sewer problems, and admitted that the sewer situation is something a buyer would want to know. Hatridge testified that a potential buyer of a different property in the subdivision backed out of a sale after learning of the sewer problems. She admitted that when she drafted the contracts for her own clients as buyers of property within the subdivision she would include language which required the seller to provide information on the sewer situation and conditioned the contract on the buyer's acceptance of the situation.

After reading the Post–Dispatch article, plaintiff called a lawyer at the title company which had issued her title commitment and then her own lawyer. On November 24, 1989 her lawyer sent a letter to Hatridge canceling the contract due to fraud.

The owners brought an action against plaintiff for specific performance of the real estate contract and other damages. To settle this action plaintiff forfeited the $4,000 earnest deposit and paid an additional $6,500. Plaintiff testified that she settled to save the expense of a lawsuit and because she believed the owners had told Hatridge to inform potential buyers of the sewer problems. Plaintiff then brought a fraudulent concealment action against Gundaker and Hatridge for damages, including the appraisal and building inspection fees on the property and the attorney's fees, costs, and the amount of settlement which she paid in defense of the owners' suit against her.

## DISCUSSION

### Duty to Disclose

In their first two points defendants assert the trial court erred in denying their motion for directed verdict. They challenge whether plaintiff made a submissible case on the element of a duty to disclose. Defendants argue they had no duty to disclose the information because MSD's failure to accept the sewers due to the encroachments was not an intrinsic defect of the property and because the information was within plaintiff's fair and reasonable reach. We disagree.

 In reviewing the denial of a defendant's motion for a directed verdict, we must view the evidence in a light most favorable to the plaintiff and accept such evidence as true. We must give the plaintiff the benefit of all favorable inferences reasonably drawn from the evidence and disregard defendants' evidence except in so far as it aids plaintiff's case. *Jarrell v. Fort Worth Steel & Manuf. Co.*, 666 S.W.2d 828, 834 (Mo.App.1984). A directed verdict is a drastic action and should only be granted where reasonable and honest persons could not differ on a correct disposition of the case. *Id.* at 833; *Fairmont Foods Co. v. Skelly Oil Co.*, 616 S.W.2d 548, 551 (Mo.App.1981).

 A duty to disclose information is imposed where "a classical fiduciary relationship exists, or, in an extension of that relationship, where a party expressly or by clear implication places a special confidence in the other." *Blaine v. J.E. Jones Constr. Co.*, 841 S.W.2d 703, 705 (Mo.App.1992). This includes a relationship where one of the parties has superior knowledge not within the fair and reasonable reach of the other party. *Id.* The affirmative duty to disclose and the failure to do so is substituted for the false representation element required in a fraud action. *Id.*

In *Blaine* we listed the following interrelated factors for determining when an affirmative duty to disclosure is imposed on the seller: 1) the relative intelligence of the parties; 2) the relationship between the parties; 3) the nature of the undisclosed fact; 4) the nature of the contract; 5) whether the concealing party was the buyer or the seller; 6)

the importance of the undisclosed fact; and 7) the parties' respective knowledge and means of acquiring knowledge. *Id.* at 707. These factors are open-ended, with a goal of setting a standard of fair, marketplace conduct. *Id.*[1]

■ Defendants first claim they had no duty to disclose because the existence of the encroachments on the sewer easements and MSD's failure to accept dedication of the sewers were not intrinsic defects. Where the "vendor conceals an intrinsic defect not discoverable by reasonable care, there is a greater likelihood that a duty to disclose will be found than if the fact is something extrinsic to the property likely to affect market value." *Id.* at 708. In *Blaine* the nature of the undisclosed fact was extrinsic as it concerned the developer's intent to build an apartment complex next to the plaintiff homebuyers' residential property. In contrast, in this case the defect was intrinsic. The owners' property was part of a planned unit development. Homeowners in the Cedar Springs subdivision not only owned their individual units in fee simple but also had an undivided interest in the common areas of the development upon which the defective conditions existed. The homeowners were required to pay for the upkeep and maintenance of the common areas which, in the absence of acceptance by MSD, would expose them to liability for the maintenance and upkeep of the sewer system within the subdivision. Because of the nature of the property interest for which plaintiff contracted, the undedicated sewer system and the underlying property defects were intrinsic defects.

■ Defendants next contend that plaintiff failed to establish that the information was not within her fair and reasonable reach, in that she presented no evidence of reasonable attempts to discover the information, or that such attempts would have been fruitless.

There was substantial evidence to support a conclusion that the defect was not discoverable by reasonable care. Hatridge listed the sewers as public and did not mention the problems in the listings. Neither Hatridge nor the owners told plaintiff about the sewer situation. There was no evidence that a visual inspection of the property would indicate the encroachment on the sewer easements or MSD's refusal to accept dedication of the sewer system. Neither the building inspection, the loan approval, the title commitment, nor the subdivision association's declaration, by-laws and operating budget mentioned the sewer situation.

Substantial evidence was adduced which would support a finding that the undisclosed information was not within the plaintiff's reasonable reach. Plaintiff testified that she had 14 years experience as a realtor, and that during that time she had never come across a similar sewer problem. Plaintiff also testified that because the sewers were listed as public on the property listings, she would never have thought to inquire whether they were accepted by MSD. Both parties testified to plaintiff's thoroughness in protecting her interests and redrafting the sales contract to do so.

The evidence and reasonable inferences to be drawn therefrom were not so strongly against plaintiff as to leave no room for reasonable minds to differ. The trial court did not err in denying the motion for directed verdict. Points one and two are denied.

*Evidence of Costs of Defense and Settlement of Owners' Lawsuit*

Defendants' third and fourth points both relate to the evidence of the costs of defense and settlement of the owners' lawsuit. For their third point defendants assert that the trial court erred in denying their motion for judgment in accordance with the motion for directed verdict because there was insufficient evidence to support a verdict for damages in the amount of $27,500.00. They argue that the costs of defense and settlement borne by the plaintiff in the owners' lawsuit were not the direct and proximate result of the fraud alleged in plaintiff's petition. For their fourth point defendants challenge the trial court's admission of evidence of the amount plaintiff paid in legal fees defending

---

1. Further, even though these factors are used most often to determine whether the concealer had a duty to disclose, some of these factors are occasionally used to determine whether one of the other elements of fraud was proved. *Id.* at 707 n. 1.

the owners' lawsuit. We find the costs of defense were a proper element of damages and were properly admitted.

A judgment notwithstanding the verdict is a drastic action and should only be granted where reasonable and honest persons could not differ on a correct disposition of the case. *Dierker Assocs., D.C., P.C. v. Gillis,* 859 S.W.2d 737, 743 (Mo.App.1993). In reviewing the denial of a motion for judgment notwithstanding the verdict, we view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party and disregard all evidence and inferences to the contrary to determine whether a submissible case was made. *Id.*

A buyer may recover for any injury which is the direct and natural consequence of a seller's fraud. *McCall v. Jim Lynch Cadillac, Inc.,* 791 S.W.2d 456, 458 (Mo.App.1990). "When one by fraud or other actionable misconduct makes it necessary for another to bring or defend a suit, the latter in a new action may recover against the former the expenses of the earlier litigation." CHARLES T. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 67 (1935); *see also* RESTATEMENT (SECOND) OF TORTS § 914(2) (1979); *Phil Crowley Steel Corp. v. Sharon Steel Corp.,* 702 F.2d 719, 721 (8th Cir.1983) (applying Restatement rule to allow recovery of attorney's fees in a case decided under Missouri law). The Restatement recognizes that the injured party in these circumstances can recover the amount reasonably expended to satisfy a judgment as well as the costs of defense. *See* RESTATEMENT (SECOND) OF TORTS § 914(2) cmt. b, illus. 1.

Expenditures made in defense of a suit in specific performance are recoverable in a subsequent suit against the party acting fraudulently. *Myers v. Adler,* 188 Mo.App. 607, 176 S.W. 538, 541 (1915). In *Myers* the buyers rescinded a contract after being led into the contract through fraud of their own agent, and were sued by the seller for specific performance. The court held that the suit and the expenses of defense are "a direct result of the violation of [agent's] duty, and one that could have been reasonably anticipated as likely to happen on [buyers'] discovery of the true facts and their refusal to carry out the contract." *Id.; see also State ex rel. Moore v. Morant,* 266 S.W.2d 723, 727 (Mo.App.1954). Points three and four are denied.

*Jury Instructions*

In their points five through ten, defendants challenge on various grounds the giving of jury instructions 6, 7, 8, and 10. Only one assignment of error relating to Instruction No. 7 was preserved for review. We address that error first.

*Instruction 7*

For their fifth point defendants maintain that the trial court erred in giving Instruction No. 7 (modified MAI 23.05 [1981 Revision]), because there was no evidence to support paragraph third.[2] Defendants argue that the instruction was improper because there was no evidence to support the finding that plaintiff in the exercise of ordinary care could not have discovered the walls encroached on sewer easements or that MSD refused to accept sewer dedication.

An instruction must be supported by substantial evidence, evidence which, if true, is probative and from which the jury can reasonably decide the case. *Braniecki v. Mound City Yellow Cab Co., Inc.,* 861 S.W.2d 683, 685 (Mo.App.1993). In reviewing an instruction, we view the evidence and inferences in a light most favorable to the instruction and disregard contrary evidence. *Id.* To reverse on grounds of instructional error, the party challenging the instruction must show that the offending instruction, misdirected, misled or confused the jury. *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. banc 1986).

The evidence set out earlier in this opinion relating to whether the information

---

**2.** Paragraph third of Instruction No. 7 provided:
Third, plaintiff did not know and in the exercise of ordinary care could not have known that tie walls and brick walls were built over the sewers in Cedar Springs Subdivision or that Metropolitan Sewer District had refused to accept dedication of the sewer system in Cedar Springs Subdivision[.]

was within plaintiff's fair and reasonable reach is substantial evidence which also supports an instruction submitting the issue of plaintiff's exercise of ordinary care. Point five is denied.

### Unpreserved Issues

The remainder of the points relied on, points six, seven, eight, nine and ten, raise instructional errors which were not preserved. For the reasons which follow these points are denied.

Before we address the specific errors raised, we first point out that this case was tried in March, 1994 and is thus subject to the version of Rule 70.03 which became effective January 1, 1994. The first two sentences of that rule provide:

> Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

The former rule allowed review where the specific objection was made in the motion for new trial even if it had not been raised at trial.

▇▇▇ In point six defendants argue that the trial court's submission of Instructions Nos. 6 and 7 are in error because they instruct the jury that it need only find that plaintiff could not have known of the sewer situation "in the exercise of ordinary care." They contend that the appropriate standard is "reasonable diligence." Defendants made no trial objection to Instruction No. 6, which defined ordinary care. Accordingly, this objection is not preserved for review. *See* Rule 70.03. Defendants did not make a specific objection at trial to the use of the phrase "ordinary care" in Instruction No. 7. Rather, they objected on different grounds. Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be re-

viewed on appeal. *Wilson v. Kaufmann,* 847 S.W.2d 840, 846–47 (Mo.App.1992).

▇▇▇ In point seven defendants contend that the trial court, in submitting Instruction No. 7, erroneously instructed the jury to find whether Hatridge had a "duty" to disclose without defining the term "duty" or hypothesizing ultimate facts which would create such a duty. Defendants objected to the use of "duty" in Instruction No. 7 at trial on the grounds that Hatridge had no legal duty and the instruction asked the jury to make a legal determination of whether or not a duty existed. The thrust of defendants' trial argument was that the jury should not be instructed to find a duty, not that the word duty should be defined. Thus, defendants raise different grounds for error on appeal than they did at trial and in so doing have failed to preserve the issue for review.

▇▇▇ Further, defendants did not request or offer an instruction defining the term "duty". Where a party contends that a term in an instruction needs definition, it is that party's duty to request and offer an instruction containing a definition of that term. *Walsh v. St. Louis Nat'l Baseball Club, Inc.,* 822 S.W.2d 559, 563 (Mo.App.1992). Absent such a request and offer, that party cannot complain on appeal of the trial court's failure to define the term. *Id.*

In point eight defendants assert that the court prejudicially erred in submitting Instruction No. 10 [3] (MAI 4.01 [1980 Revision]) because the use of the phrase "occurrence mentioned in the evidence" would allow the jury to find against the defendants for any circumstance causing plaintiff injury, not just those which are legal grounds for recovery and supported by the evidence. Particularly, defendants argue that while defendants' nondisclosure of the sewer situation may be a compensable event, the defendants' representation on the listings that sewers were public is not a compensable event because plaintiff did not submit it to the jury in the verdict-director. Defendants further argue that be-

---

**3.** Instruction No. 10 reads as follows: If you find in favor of plaintiff Seidel then you must award plaintiff Seidel such sum as you believe will fairly and justly compensate plaintiff Seidel for any damages you believe she sustained as a direct result of the occurrence mentioned in the evidence.

cause that "occurrence" was not submitted to the jury, the term "occurrence" in the instruction should have been defined so that the jury would consider only the nondisclosure of the encroachments and MSD's refusal to accept the system.

MAI Notes on Use advises that "[w]hen the evidence discloses a compensable event and a noncompensable event, both of which are claimed to have caused damage, the term 'occurrence' may need to be modified." MAI 4.01 [1980 Revision], Notes on Use (1990 Revision). The Notes on Use further provide, "When the term 'occurrence' is modified, substitute some descriptive phrase which specifically describes the compensable event or conduct." *Id.*

 Defendants did not offer a specific descriptive phrase to substitute for the word "occurrence." Rather they offered their own instruction which replaced the word "occurrence" in MAI 4.01 with "fraud." The phrase "fraud mentioned in the evidence" does not cure the problem defendants now raise on appeal. If the word "occurrence" could be taken to allow the jury to consider the listing of the sewers as public, the word "fraud" could also allow the jury to consider the same event. Defendants sought to submit the word "fraud" at trial because their trial objection to the use of "occurrence" was based on the grounds that the use of the word "occurrence" might lead the jury to consider damages resulting from the owners' separate action rather than solely from any nondisclosure by defendants. Defendants advised the trial court that they wanted to argue to the jury that the owners' lawsuit was a noncompensable event. They did not mention the possibility that the use of the word occurrence could cause the jury to believe that the representation on the listings was a compensable event. As we have held, plaintiff was entitled to seek damages incurred as a result of the owners' lawsuit. Defendants attack the instruction on new grounds on appeal. Under these circumstances the error raised on appeal is not preserved.

In points nine and ten defendants challenge the submission of Instruction No. 8 on the grounds that it constituted a roving commission because 1) it allowed the jury to find against defendant Gundaker "for any fraud of defendant Hatridge" and 2) it failed to describe the ultimate conduct or acts of defendant Hatridge which were alleged to have been within the scope and course of her agency. Defendants did not object to Instruction No. 8 on either of these grounds during trial. The error is not preserved. *See* Rule 70.03. Further, defendants failed to provide any citation to relevant authority in their argument under these points. Failure to cite any relevant authority or to explain the failure to do so, preserves nothing for review. *State ex rel. Missouri Hwy. & Transp. Com'n v. Jacob,* 887 S.W.2d 661, 662 (Mo.App.1994).

The judgment of the trial court is affirmed.

CRANDALL and DOWD, concur.