674 S.W.2d 268 (1984)
Lexye C. SCHELL, a Minor, by her Father and Next Friend, Rollin SCHELL, and Rollin Schell and Gwendolyn Schell, Plaintiffs-Respondents,
v.
Marvin A. KEIRSEY, Roy E. Carrell, and Othal L. Hodson, as representative parties of the Butler Baptist Association, Defendants-Appellants.
No. WD34678.
Missouri Court of Appeals, Western District.
July 17, 1984.
*270 Edward J. O'Reilly, Kansas City, for defendants-appellants.
Edward J. Murphy, Butler, for plaintiffs-respondents.
Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.
KENNEDY, Judge.
Plaintiff Lexye Schell, a minor, had a jury verdict for $25,000 for personal injuries, and her parents a verdict for $10,000 for medical expenses and loss of services, growing out of a diving accident in which Lexye suffered a broken neck. Defendant[1] was the owner of the swim lake or pond where the injury took place.
From the ensuing judgments the defendant has appealed. We affirm.
Lexye was 12 years old when the accident occurred on July 7, 1978. The pond where the accident took place was located on a summer camp ground facility near Butler. Lexye was a camp counselor, aiding in the supervision of some handicapped childrenincluding Lexye's sisterwho were having a recreational encampment. The group paid defendant for the use of the campground facilities.
A kind of platform had been erected on piers, extending out into the water a distance which we estimate to be 15 to 20 feet, to which a diving board was attached which extended out an additional 4 feet beyond the end of the platform. There were two levels of the platform. A diver would step from shore onto the first level. He would go approximately 10 feet to a second level. The second level was approximately 18 inches higher than the first. A diving board was anchored at its butt end and lay along the entire 5-to-10-foot length of the second level and extended four feet beyond the end of the platform. These distances we estimate from photographs included in the record.
For safety, the "buddy" system was in effect during swimming sessions. When the lifeguard blew a whistle, a counselor like Lexye was supposed immediately to join her "buddy"the child in her charge in the water and they were to join hands and hold them aloft. Lexye's dive was in response to the lifeguard's whistle.
At the time of the accident, the water in the area in front of and under the diving board was nine feet deep, so that a person could dive off the diving board with relative safety. Lexye had made several dives into that area. The dive which resulted in the broken neck was not made from the diving board. It was made from the upper level of the platform and at a right angle therefrom. She dived from a point nearer the forward end of the upper level of the platform than the back end. There were no railings on the platform. Unknown to Lexye, the water was only four feet deep at the spot where she dived. There were no warning signs of any description, nor any depth markers. The water was murky and it was not possible for one to see the depth of the water. Lexye struck her head on the bottom and sustained the broken neck.
*271 Other facts will appear in connection with the various points raised by the defendant.

I
Defendant has a number of criticisms of the plaintiff's verdict-directing instruction, which we list here: One, that it does not require a finding of the defective condition (shallow water) which made the pond not reasonably safe for diving; two, that it does not require finding that defendant knew or by the exercise of ordinary care could have known that users of the pier would dive where plaintiff dived; three, that the submission that "plaintiff dove from an area of the pier constructed and used for diving" was not supported by the evidence; and four, that the first paragraph of the instruction was too detailed and was not "simple, brief and impartial" as required by Supreme Court Rule 70.02.
We have copied the plaintiff's verdict-directing instruction into the margin.[2] It is patterned after MAI 22.03. It is self-evident that none of the criticisms is valid and we do not think any discussion is necessary to explain that conclusion.

II
Defendant complains of plaintiff's attorney's jury argument, and says the court erred in not declaring a mistrial. It highlights the following statements made by plaintiff's attorney during the course of his jury argument:
Let's take this condition. You come into my law office and there is a hole in the floor, and I know about the hole in the floor, or I should know about it, and I put a rug over it, and you walk in there and you step on the rug and right down through the hole in the floor. Would any of you hesitate to say that Ed Murphy did not maintain those premises in a reasonably safe condition?
* * * * * *
Do you all remember when you were 12 years old? What grade were you in?
* * * * * *
Do you want to believe that you can send your child to camp and not have that child protected? None of you would do that.
* * * * * *
What in the devil is the matter with these people? If it was unsafe to dive, why didn't they put a sign out there? Why didn't they put a lifeguard out there? Why didn't they do something? Do you want your kid exposed to that?
* * * * * *
There were no warning signs, nobody told this child don't you do this or don't you do that and put yourself, if you can, if you can recall being 12 years old well, all right, I will withdraw that.
There are cases which criticize a call to the jury to "put yourself in plaintiff's place." Such an argument, says Faught v. Washam, 329 S.W.2d 588, 602 (Mo.1959), citing a number of cases, invites each jury member to identify with the plaintiff and, in a role transferral, to sit in judgment in his own case. We have found no cases which find reversible error in such an argument alone, but the error has been accumulated with other more egregious errors to find reversible error in the total. Kelsey v. Kelsey, 329 S.W.2d 272 (Mo.App.1959); *272 Merritt v. Wilkerson, 360 S.W.2d 283 (Mo. App.1962). While the cases do criticize the argument, there is doubtless a variety of opinion among judges about the gravity of the error.
In our case the trial court sustained each of defendant's objections to the cited arguments (except: "... put yourself, if you can, if you can recall being 12 years old ...", which we deal with in the next paragraph) and instructed the jury to disregard the argument. That was sufficient in the trial judge's discretion to remove any possible slight prejudicial effect, without the necessity of a mistrial. Hoene v. Associated Dry Goods Corporation, 487 S.W.2d 479, 485 (Mo.1972).
As to the argument that the jurors should recall when they were 12 years old, there was nothing wrong in that argument in the context in which it was made. Plaintiff's attorney was emphasizing the standard of care for children of that age and was making the point that they should not be held to an adult standard of care. See Bollman v. Kark Rendering Plant, 418 S.W.2d 39, 46-47 (Mo.1967); Dorrin v. Union Electric Company, 581 S.W.2d 852, 856-57 (Mo.App.1979).
We find no reversible error in the court's rulings with respect to the jury argument.

III
Defendant alleges error in denying a mistrial as a result of the following voir dire incident. Plaintiff's attorney Mr. Murphy was conducting the voir dire of the jury panel. Venireman Smith said:
"I think that they [the defendant] ought to have insurance and they ought to be insured the same as a contractor, and I would consider them as default in not fixing the lake property."
Mr. Murphy answered: "Well, I can't discuss insurance with you, and I don't want you to assume either way about that...."
Plaintiff's attorney then inquired of the panel about any religious prejudice any of them might have, then took up the subject of the veniremen's relationships with the attorneys involved in the case. Then Mr. Murphy asked: "Now, is there any member of the jury or any members of your immediate family that are employees or carry policies of insurance with the Church Mutual Insurance Company? ... I take it by your silence none of you do."
At the conclusion of the voir dire, defendant's attorney moved for a mistrial because of "the way the question was handled with Mr. Smith on the insurance." The trial court denied the same. On appeal the defendant treats of the combination of the insurance question raised by Venireman Smith and Mr. Murphy's response to it, and the later question about the Church Mutual Insurance Company.
There can certainly be no charge of any bad faith on the part of plaintiff's attorney here. Sometimes a case may become so poisoned without anyone's fault that a mistrial is required, but we do not find in this case that the trial judge in any way abused his discretion in not declaring a mistrial. The defendant's argument here is that the names "Butler Baptist Association" and "Church Mutual Insurance Company" signaled to the jury that there was liability insurance in the case. Maybe so, but that would be inevitable in any trial. We can make no special rules to accommodate the name chosen by the insurance company. The point is denied.

IV
Defendant complains of the court's denial of a mistrial requested on account of a comment interjected by plaintiff's counsel during the examination of a witness.
Plaintiff's attorney introduced a photograph of the pond with the platform and diving board. The photograph was taken four years after the accident. Plaintiff's attorney said, in his examination of the witness identifying the photograph: "Those pictures were taken what, four years after this kid got hurt. There still is no warning signs [sic] up."
*273 Defendant objected. The trial court sustained the objection and instructed the jury to disregard counsel's question.
We do not find any abuse of the court's discretion in refusing to declare a mistrial.
Defendant supposeswithout citing any authority therefor, or making any plausible argumentthat the rule against proof of subsequent repairs to prove antecedent negligence, Diversified Metals Corporation v. Aaron Ferer & Sons, Inc., 498 S.W.2d 783 (Mo.1973), also works to disallow proof that no subsequent repairs were made. However that may be, the trial court sustained the objection and instructed the jury to disregard the plaintiff's counsel's comment. The photograph was in evidence, without objection from defendant. That there were no warning signs there was already before the jury. The trial court's sustaining the objection and his admonition to the jury was sufficient to cure the error, if there was any, and we find no abuse of discretion in failure to declare a mistrial.

V
Defendant in a separate point says the cumulative effect, the "prejudicial actions" of plaintiff's counsel and the instruction error constituted reversible error.
We do not agree and we disallow the point.

VI
Defendant says that the verdict must be set aside because it was not pleaded or proved that plaintiff lacked actual or constructive knowledge that the water was shallow and therefore not reasonably safe for diving. It says the petition was therefore fatally deficient. It correctly says that the failure of a petition to state a cause of action is a jurisdictional defect which may be raised at any time. Oberkramer v. City of Ellisville, 650 S.W.2d 286, 297 (Mo.App.1983); Fallert Tool & Engineering Company v. McClain, 579 S.W.2d 751, 756 (Mo.App.1979). However, that does not help defendant here, for in judging a petition after verdict, when it is too late to mend it, the petition is given its broadest intendment and it is liberally construed on the side of the pleader. Paddock Forest Residents Association v. Ladue Service Corporation, 613 S.W.2d 474, 476 (Mo.App.1981); Aluma Kraft Manufacturing Company v. Elmer Fox & Company, 493 S.W.2d 378, 380 (Mo.App.1973). Applying that standard, we find it clearly implied in the petition that the deceptive dangerous condition was not known to this 12-year-old plaintiff, and that she in the exercise of ordinary care could not have known of it.

VII
But defendant says that plaintiff was guilty of contributory negligence as a matter of law in diving in at the point where the injury occurred. It points out that she had dived off the diving board two or three times and had swum back to the ladder to climb out of the water. The ladder was connected with the first, or lower, level of the platform at the point of the step up to the higher, or second level. At the foot of the ladder, the water was waist high to Lexye, who at that time was five feet or five feet one inch in height. She knew the pond had a sloping bottom. This should have alerted her, defendant says, that the water only a few feet from there, where she dived, was dangerously shallow.
We think the question of Lexye's contributory negligence was one for the jury. The water where she dived, so the jury could have believed, was closer to the nine-foot water than it was to the shallow water at the ladder. There was no railing and a jury of sensible people could very well believe that the layout was an open invitation to a child to dive from it. It was not necessarily negligence on her part to suppose that she could dive with safety at that point; it was a question for the jury. Defendant's point is denied.
The judgment is affirmed.
All concur.
NOTES
[1] The plural defendants are trustees of an unincorporated association, Butler Baptist Association. In the opinion we refer to the "defendant" in the singular as meaning the Association, as the parties did in the trial court.
[2] Your verdict must be for plaintiff Lexye Schell and against defendant representatives and trustees of the Butler Baptist Association if you believe:

First, defendant maintained a swimming pond and pier which had an area constructed and being used for diving but with a portion of said area being undesignated as being too shallow for diving, and as a result that portion of the pond was not reasonably safe for diving, and
Second, plaintiff Lexye Schell did not know and by using ordinary care could not have known of this condition, and
Third, defendant knew or by using ordinary care could have known of this condition, and
Fourth, defendant failed to use ordinary care to make the condition reasonably safe or to warn of it, and
Fifth, as a direct result of such failure, plaintiff was injured unless you believe plaintiff is not entitled to recover by reason of Instruction Number 11.