**James K. McCALL,**
**Plaintiff–Respondent,**

v.

**JIM LYNCH CADILLAC, INC.,**
**Defendant–Appellant.**

**No. 57192.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 22, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 20, 1990.

David Olin Kreuter, Kreuter & Gordon, Clayton, for defendant-appellant.

Lawrence O. Willbrand, Paul H. Kaiser, St. Louis, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Jim Lynch Cadillac, Inc., appeals from the judgment, entered pursuant to a jury verdict, in favor of plaintiff, James K. McCall, in a civil action based on fraud. The jury awarded plaintiff actual damages in the amount of $3,485.00 and punitive damages of $17,000.00. We reverse.

Viewed in the light most favorable to the verdict, the evidence was that plaintiff arranged to purchase a Cadillac Seville automobile from defendant through the General Motors Corporation employee discount program. He put $1,000.00 down and financed the remainder through General Motors Acceptance Corporation (GMAC). On June 30, 1986, plaintiff signed a contract with defendant to purchase the automobile for $16,009.00, with monthly payments of $355.23. On July 3, 1986, plaintiff returned to defendant to complete the transaction. There, he was met by defendant's finance manager who informed plaintiff that defendant had "messed up on the paperwork" and that it was necessary for plaintiff to sign a second contract. Plaintiff signed the new contract on which the purchase price was blank. The finance manager then filled in a purchase price of $17,147.84 and informed plaintiff that the amount of the monthly payment was $382.17. Plaintiff told the finance manager that the new price was unacceptable to him. After the finance manager informed plaintiff that he must either accept the adjusted price or refuse the automobile, plaintiff left with the vehicle.

Plaintiff made monthly payments of $355.23 to GMAC in accordance with the original contract; but was notified by GMAC that the payments were insufficient and that GMAC would take action against plaintiff if he did not comply with the terms of the second contract. Plaintiff then filed this action in fraud against defendant. Defendant counterclaimed, seek-

ing the difference between the monthly payments plaintiff had agreed to pay and the payments he had actually made. Plaintiff made a total of seven payments. GMAC eventually repossessed the automobile because plaintiff stopped making any payments when he was on strike. After the repossession, defendant filed an amended counterclaim in which it sought $4,656.29, the amount of the deficiency it incurred when it resold the repossessed vehicle. After a trial, the jury returned a verdict in favor of plaintiff on his fraud action and awarded actual damages in the amount of $3,485.00 and punitive damages in the amount of $17,000.00. The jury also found in favor of plaintiff on defendant's counterclaim. The trial court entered judgment pursuant to those verdicts.

In its first point, defendant contends that plaintiff's petition failed to state a claim upon which relief could be granted. Defendant claims the court therefore acquired no subject matter jurisdiction because plaintiff failed to plead damages specifically.

■ Defendant did not raise this issue below. Defendant correctly states that the failure of a petition to state a cause of action is a jurisdictional defect which may be raised at any time, even on appeal. *Schell by Schell v. Keirsey*, 674 S.W.2d 268, 273 (Mo.App.1984); Rule 55.27(a)(1). In judging a petition after a verdict, however, when it is too late to amend it, the petition. is given its broadest intendment and is liberally construed on the side of the pleader. *Schell*, 674 S.W.2d at 273.

■ In his petition, plaintiff alleged, *inter alia*, that he "conveyed a payment of $355.24 to [GMAC] which was accepted but [GMAC] claims that under the purported contract of July 3, 1986, the additional sum of $26.93 is delinquent ... and unless the said delinquency is immediately cured [GMAC] will 'take whatever action [it] deem[s] necessary to protect [its] interest' " and that "as the result of the foregoing [plaintiff] employed an attorney and incurred attorney's fees ... and hence was damaged." A plaintiff may recover for any injury which is the direct and natural consequence of a plaintiff's acting on the

faith of the defendant's false representations. *Rogers v. Hickerson*, 716 S.W.2d 439, 446 (Mo.App.1986). A plaintiff's recovery is not limited to general damages, but a plaintiff may also recover special damages necessarily incurred solely by reason of the fraud. *Id.; Miller v. Higgins*, 452 S.W.2d 121, 125 (Mo.1970). These expenditures may properly include the professional aid of an attorney to mitigate damages and to avoid future losses. *Miller*, 452 S.W.2d at 125.

■ Here, plaintiff pleaded that he was willing to comply with the terms of what he perceived as the original contract and that he had employed an attorney to forestall GMAC from taking any action against him pursuant to the second contract allegedly procured by fraud. He pleaded damages in the form of attorney's fees which he incurred to prevent his being liable in the future for the higher purchase price set forth in the second contract as well as to protect his present interest in the automobile. In addition, defendant's counterclaim filed against plaintiff required plaintiff to make expenditures for attorney's fees to defend against it. Plaintiff's petition was adequate for the trial court to acquire subject matter jurisdiction over the instant action. Defendant's first point is denied.

■ In its second point, defendant asserts that plaintiff failed to prove all of the requisite elements of fraud. In particular, defendant argues that plaintiff suffered no pecuniary loss resulting from defendant's fraud in securing the second contract. As opposed to trespass and other distinct injuries for which a plaintiff may recover nominal damages if he fails to plead and prove actual pecuniary damages, fraud belongs to that class of torts of which pecuniary loss constitutes a part of the cause of action. *Harris v. Penninger*, 613 S.W.2d 211, 214 (Mo.App.1981). In addition, the damages must flow from the fraud as the proximate and not the remote cause, and must be the natural and probable consequence of the fraud. *Collins v. Adams Dairy Co.*, 661 S.W.2d 603, 605 (Mo.App. 1983).

In the instant action, plaintiff pleaded pecuniary damages in the form of attorney's fees. As discussed above, the attorney's fees which plaintiff incurred to prevent future loss to him as a result of defendant's fraud were recoverable in an action in fraud. Plaintiff, however, offered no proof of attorney's fees at trial, with the result that no pecuniary losses relative to attorney's fees were established.

Plaintiff did attempt to prove damages of $1,200.00, which amount approximated the difference between the purchase price of the automobile in the original contract and the purchase price in the second contract; and plaintiff's counsel argued those damages to the jury. Plaintiff made his car payments based upon the terms of the original contract. When he stopped making any payments, the automobile was repossessed as provided by the terms of the original contract. Any additional liability sought to be imposed under the terms of either contract was adjudicated in favor of plaintiff by entry of judgment in his favor on defendant's counterclaim. Because plaintiff neither paid, nor was obligated to pay, GMAC for the automobile in accordance with the terms of the fraudulently procured contract, it follows that plaintiff failed to prove a pecuniary loss resulting from the difference in the purchase price of the automobile as reflected in the two contracts. Plaintiff therefore failed to establish that he suffered any actual damages.

On appeal, plaintiff argues that the evidence and inferences therefrom established that "GMAC finance company did not send the plaintiff a payment book and did not allow plaintiff the usual benefit of paying only the interest when there is a General Motors lay-off opting to repossess the vehicle instead. Those actions resulted from the instant fraudulent conduct." Although the evidence contains references to these allegations, the evidence linking these occurrences to defendant's fraudulent conduct in securing the second contract is tenuous and speculative in nature. Plaintiff also did not prove what pecuniary loss, if any, plaintiff sustained as a consequence of these incidents.

In sum, plaintiff failed to prove that he suffered a pecuniary loss as a proximate result of defendant's fraud, a necessary element of a cause of action in fraud. He therefore failed to make a submissible case on actual damages. The trial court erred in awarding plaintiff actual damages of $3,485.00.

Moreover, in the absence of evidence of actual damages, there can be no punitive damages. *Adams Dairy*, 661 S.W.2d at 606. This rule acquires added significance in a case where actual pecuniary loss is an intrinsic element of the cause of action. *Id.* Based upon plaintiff's failure to prove any actual damages in his action in fraud, it follows that he was not entitled to an award of punitive damages. The trial court erred in awarding plaintiff punitive damages in the amount of $17,000.00.

In view of our holding, we need not address defendant's other points on appeal. The judgment of the trial court awarding plaintiff actual and punitive damages is reversed. The judgment in favor of plaintiff on defendant's counterclaim was not appealed and therefore stands.

PUDLOWSKI, P.J., and KAROHL, J., concur.