**MEMCO, INC., Plaintiff–Respondent,**

v.

**Mary CHRONISTER, Defendant–Appellant.**

**No. 23230.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 27, 2000.

Donald W. Ingrum, Allman, Ingrum, Wilson & Akers, L.L.C., Branson, for appellant.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for respondent.

KENNETH W. SHRUM, Judge.

Memco, Inc. ("Plaintiff") employed Mary Chronister ("Defendant") as its "office manager" for several years. While so employed, Defendant surreptitiously took money from Plaintiff to which she was not entitled. Plaintiff brought this civil suit to recover the money taken. A non-jury trial resulted in a judgment for Plaintiff in the amount of $167,574.04.[1]

Defendant appeals, charging trial court error as follows:

(1) the trial court's judgment was grounded in "conversion," a remedy not available on this record;

(2) the trial court abused its discretion in allowing Plaintiff leave to amend its pleading on the day of trial; and

(3) the trial court improperly included attorney fees and accountant fees as part of the damages awarded.

We do not agree with Defendant's premise that "conversion" was the remedy selected in entering this judgment. The judgment sounded in fraud, which is a viable remedy under the facts proven. As to the amended pleading, we find no abuse of discretion in allowing the amendment. The trial court erred, however, when it included attorney fees and accounting fees as part of Plaintiff's recovery. We affirm in part; we reverse in part and remand.

## STATEMENT OF FACTS

Plaintiff is a Missouri corporation owned by Robert and Julie Middleton ("Middletons"). Defendant was employed by Plaintiff from 1984–1995 as an "office manager." Her job responsibilities included doing all of the "accounting, payables, [and] receivables." Defendant also did the payroll throughout her tenure as office manager, except for three instances when she was on vacation. Once the payroll checks were prepared, they were either signed by Middletons or stamped with a signature stamp by Defendant.

Defendant resigned in June of 1995. Her resignation came at the same time the Middletons decided to implement a new computer system to handle Plaintiff's payroll.

In September 1996, the Middletons received a letter from the Internal Revenue Service ("IRS") inquiring about certain of Plaintiff's payroll records and withholdings. This prompted the Middletons to

---

1. This total consists of actual damages, accrued interest, accounting fees, and attorney fees.

delve into Plaintiff's records, first by a consulting accountant and later by a Springfield accounting firm hired by Plaintiff's lawyer. Among other irregularities, the accountants found several years in which Defendant falsely prepared Plaintiff's quarterly 941 IRS forms. Specifically, Defendant reported to the IRS, via these forms, that money had been deducted from her payroll checks as income tax withholdings; yet, this did not happen. In handling the payroll duties for Plaintiff, Defendant issued herself paychecks without deducting the federal and state income tax withholdings as reported to the IRS. Defendant then used funds from Plaintiff's general corporate account to provide the IRS the money falsely reported as coming from her paychecks. By this scheme, Defendant systematically took money from Plaintiff to which she was not entitled.

The Middletons also discovered checks drawn on Plaintiff's corporate account which were not for materials and supplies purchased by Plaintiff. One of these checks was to Harry Cooper Supply Company in the amount of $5,039.93, and the other to White River Woodworks for $7,702.95. Both checks were written December 4, 1992. Also, the Middletons found a $4,677.77 check drawn on Plaintiff's corporate account dated December 1, 1992, in which Defendant was named as payee. Evidence established that $677.77 of the $4,677.77 check represented her "normal" salary, but the additional $4,000 was money to which Defendant was not entitled. The three December 1992 checks were written during the time Defendant was building a home in the Branson area. Neither the Middletons nor any other of Plaintiff's employees learned of Defendant's nefarious conduct until after she resigned. Apparently, Defendant's misconduct was not discovered earlier because she was the sole person responsible for reconciling bank statements with the corporate books and records.

After learning of Defendant's schemes, Plaintiff filed a two count petition on April 20, 1998. Paragraphs one through eight of Plaintiff's petition contained general allegations claiming, among other things, Defendant acquired money from Plaintiff by "false pretenses" and "actual fraud." Count I of the petition, entitled "Conversion," incorporated all general allegations, then alleged (a) Plaintiff owned the missing funds, (b) Plaintiff was entitled to possession thereof, and (c) Plaintiff demanded Defendant return the money, but she refused to do so. Also within this count, Plaintiff specifically realleged the funds were obtained by "false pretenses . . . and . . . actual fraud" which commenced "as early as January of 1992," and Plaintiff incurred various expenses in uncovering the "wrongfully appropriated" money.

On the day of trial, Defendant filed a motion in limine to exclude any references to "cash acquired prior to January 1992" and any amounts spent for accountant fees. The trial court overruled the motion and allowed Plaintiff leave to amend the pleadings by interlineation to present evidence of Defendant's chicanery prior to 1992. Defendant was also allowed to amend her answer to include an affirmative defense based on the statute of limitations. At the same time, Plaintiff dismissed its Count II requesting punitive damages. The court then continued the case until the next day. Both parties waived a jury. After trial, the court entered judgment for Plaintiff for $167,-574.04, but gave Defendant credit for $23,793 paid by her as restitution in a related criminal proceeding. This appeal followed.

## STANDARD OF REVIEW

■ In a court-tried case the standard of review is that which is set out in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), and is as follows: "The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the

law, or unless it erroneously applies the law."

## DISCUSSION AND DECISION

*Point III: Was the Judgment Based On An Unavailable Remedy?*

■ We reproduce Defendant's third point relied on as follows:

"THE TRIAL COURT ERRED IN AWARDING JUDGMENT IN FAVOR OF MEMCO, INC. FOR ANY AMOUNT IN THIS CASE BECAUSE A CLAIM FOR CONVERSION LIES ONLY FOR A SPECIFIC CHATTEL WHICH HAS BEEN WRONGFULLY CONVERTED, IN THAT IN THIS CASE THERE WAS NO SPECIFIC CHATTEL THAT WAS TAKEN."

In arguing this point, Defendant assumes the trial court entered judgment based on "conversion" principles. Such assumption ignores other relevant parts of the record, including allegations in Plaintiff's petition which are broad enough to state an action for either money had and received or an action for fraud. Also, Defendant's argument disregards evidence in the record which supports recovery on theories other than conversion.[2]

■ While it is axiomatic one cannot recover for a cause of action not pleaded, *Browning–Ferris v. Landmark Systems*, 822 S.W.2d 569, 571[1] (Mo.App.1992), it is also true a party can plead alternative causes of action in a petition and may do so in one count. Rule 55.10;[3] *Browning–Ferris* at 571[2]. " 'The character of a cause of action must ... be determined from the facts stated in the petition and not by the prayer or the name given the action.' " *McKinnon v. McKinnon*, 896 S.W.2d 90, 91 (Mo.App.1995) (quoting

*McMenamy v. Main*, 686 S.W.2d 874, 876 (Mo.App.1985)). It is the facts stated in the petition, along with the relief sought, which under our system of code pleading are to be looked at to determine the cause of action, rather than the form of the petition. *Alarcon v. Dickerson*, 719 S.W.2d 458, 461[2] (Mo.App.1986).

Although Plaintiff's Count I was entitled "Conversion," the facts stated therein referred to and supported multiple causes of action. Plaintiff realleged its general allegations within this count. Among these were claims Defendant obtained money owned by Plaintiff by means of "false pretenses" and "actual fraud." Plaintiff specifically stated the manner Defendant used to accomplish her subterfuge, which supported claims for money had and received and fraud. Also within Count I, Plaintiff claimed Defendant "intentionally ... appropriated and converted" funds, obtained the funds "by false pretenses ... and engaged in actual fraud," and Plaintiff "demanded a return of the funds wrongfully taken."

■ "Fraud is defined as an instance or act of trickery or deceit especially when involving misrepresentation; an act of deluding." *Smile v. Lawson*, 435 S.W.2d 325, 328 (Mo.banc 1968). " 'Fraud' is a malfeasance. That is, 'fraud' is a positive act resulting from a willful intent to deceive." *Harris v. Penninger*, 613 S.W.2d 211, 214[2] (Mo.App.1981).

■ The claims asserted in the petition are broad enough to state a cause of action for fraud. The purpose of a pleading is to limit and define the issues to be tried in a case and put the adversary on notice thereof. *See Luethans v. Washing-*

---

**2.** We agree with Defendant that an action for conversion does not lie upon these facts. Defendant obtained money from Plaintiff after the money was deposited into a general corporate account. Once this occurred, the money became a general debt and was no longer specifically identifiable. *See Dwyer v. Unit Power, Inc.*, 965 S.W.2d 301 (Mo.App. 1998). For conversion to lie, Defendant

would have to intercept the funds prior to their being deposited, and then use them for her own benefit. *See Dayton Constr., Inc. v. Meinhardt*, 882 S.W.2d 206 (Mo.App.1994).

**3.** All rule references are to Supreme Court Rules (1998) unless otherwise indicated.

*ton University*, 894 S.W.2d 169 (Mo.banc 1995). "A petition is sufficient if it invokes principles of substantive law which entitle the plaintiff to relief and informs the defendant of what the plaintiff will attempt to establish at trial." *Empiregas, Inc. of Rolla v. Whitson*, 902 S.W.2d 347, 348[4] (Mo.App.1995). Plaintiff repeatedly used the term "fraud" throughout the petition. Furthermore, Plaintiff described the acts which constituted the fraud.

Likewise, Defendant cannot complain she was not informed of what Plaintiff intended to establish at trial. Defendant's awareness of Plaintiff's fraud theory was evident from her amended answer where she asserted "Plaintiff should have discovered the *alleged fraud*, if such fraud in fact occurred" before April 20, 1993. (Emphasis added). This was an attempt to invoke a statute of limitations defense for fraud as provided in § 516.120.5, RSMo 1994.

We further note that ten months before trial Defendant was allowed to discover what Plaintiff's accountants had uncovered. The trial court asked Defendant's attorney if Plaintiff's attorney had "sandbagged" him, and he replied, "He's not misled me, Judge." With the above-mentioned facts in mind, we find the petition was broad enough to state an action for fraud, and Defendant had notice of this claim.[4]

■ Not only must the petition support a claim for fraud, but the evidence must do so as well. Here, the evidence regarding Defendant's misconduct was un-contradicted. We presume trial judges follow the law when they enter judgments, unless the presumption is refuted by the record. *See Dycus v. Cross*, 869 S.W.2d 745, 751 (Mo.banc 1994); *Hubbs v. Hubbs*, 870 S.W.2d 901, 907[7] (Mo.App.1994). Since an action for conversion would not lie upon these facts, we presume the judge found in favor of Plaintiff based on fraud. Absolutely nothing in the record refutes that presumption. To the contrary, when the trial judge explained, in writing, his reasoning for the judgment amount, he referred to Plaintiff as "the defrauded party" and found "[t]he Defendant hid the results of her fraud and covered it up by her actions." In that same writing, the trial judge cited cases grounded in fraud. The necessary conclusion is the judgment was based on fraud. Point III is denied.[5]

### Point IV: Error in Allowing Pleading Amendment the Day of Trial?

■ Defendant next asserts the trial court abused its discretion when it allowed Plaintiff leave to amend its pleadings by interlineation on the day of the trial. The pleadings initially claimed damages only for acts committed after January of 1992. The trial court allowed the amendment so Plaintiff could present evidence of fraudulent acts committed prior to that date.

■ By leave of the court, a pleading may be amended, and this leave shall be freely granted when justice so requires. Rule 55.33(a). "Whether to allow the amendment of a pleading is at the discre-

---

4. In doing so, we do not ignore Rule 55.15 which states fraud must be pleaded specifically. However, this requirement can be waived by failing to file a motion for a more definite statement. Rule 55.27(f); *Clark v. Olson*, 726 S.W.2d 718, 719[2] (Mo.banc 1987). Defendant never filed this motion, thus waiving her right to complain of this upon appeal.

5. In her reply brief, Defendant argues for the first time that if we find the trial court entered the judgment based on "money had and received" principles (which was one of Plaintiff's contentions), then the interest awarded was incorrect. There are two answers to such argument. First, "[a]ssignments of error set forth for the first time in the reply brief do not present issues for appellate review." *Application of Gilbert*, 563 S.W.2d 768, 771[3] (Mo.banc 1978); *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 304[20] (Mo.App.1997). Second, as stated above, the judgment was grounded in fraud, not money had and received. Defendant's briefs do not claim that the interest was incorrect if recovery was based on fraud theory. "[A]llegations of error not briefed ... shall not be considered in any civil appeal." Rule 84.13(a) (2000).

tion of the trial court and this court will not disturb its decision absent an obvious and palpable abuse of discretion." *Kenley v. J.E. Jones Constr. Co.,* 870 S.W.2d 494, 498 (Mo.App.1994). Factors which courts consider are: (1) the hardship to the moving party if leave is denied; (2) the reasons for the moving party's failure to include the matter in the original pleading; (3) the timeliness of the application; (4) whether the amendment could cure the inadequacy of the moving party's pleading; and (5) the injustice to the nonmoving party should leave be granted. *St. Anthony's Medical Center v. H.S.H,* 974 S.W.2d 606, 612 (Mo. App.1998).

If Plaintiff had been denied leave to amend, it would not have been allowed to present evidence pertaining to most of its damages because these occurred prior to 1992. Restitution had already been made for the years 1993 and 1994, and Defendant resigned in June of 1995. The hardship to Plaintiff is apparent. Due to the secretive nature of Defendant's acts, at the time of the filing of the petition Plaintiff had discovered acts committed only after 1992. Certainly, the amendment cured the defects to provide Plaintiff with a full and adequate remedy. Although this was allowed on the day of the trial, there was no injustice done to Defendant. Despite the lack of formal discovery, Defendant went to the accounting firm, 10 months before trial, to examine what the investigators had uncovered. From this, Defendant knew what Plaintiff would be attempting to prove at trial. Also, in response to the court's questioning if he had been "sandbagged," Defendant's attorney admitted he was not misled in any way. Defendant was then allowed to amend her answer to include an affirmative defense based on the statute of limitations as to any acts prior to April of 1993. Upon this record, we cannot say there has been a palpable and obvious abuse of discretion. Point IV is denied.

*Points I and II: Attorney and Accountant Fees as Damage Elements?*

Defendant also claims as error the inclusion of attorney fees and accountant fees as an element of the damages awarded. Defendant's assertion has merit.

Missouri courts have historically adhered to the "American rule" that litigants, with few exceptions, must bear the expense of their own attorney fees and also the fees of any experts needed to make their case. *See Liberty v. Beard,* 636 S.W.2d 330, 331[2] (Mo.banc 1982); *Architectural Resources, Inc. v. Rakey,* 912 S.W.2d 676, 678[1] (Mo.App.1995). The generally recognized exceptions to this rule are: (1) fees authorized by contract or statute, (2) fees incurred due to involvement in collateral litigation, and (3) fees awarded when a court of equity finds it necessary to award them in order to balance benefits. *See Beard,* 636 S.W.2d at 331; *Ohlendorf v. Feinstein,* 697 S.W.2d 553, 557 (Mo.App.1985).

No exceptions attend in this case. Plaintiff has not cited, nor has our research uncovered, any statute authorizing the award. Likewise, the parties have not contracted for these fees to be paid by Defendant. Also, this is not a case involving collateral litigation. "Collateral litigation occurs when a person breaches a contract [or a duty] causing one of the other contracting parties to sue or be sued by an outside third party." *Ohlendorf,* 697 S.W.2d at 556[4]. Even though Plaintiff initially expended money as the result of a collateral event, i.e., the letter from the IRS, the fees incurred here result from the *primary* litigation, i.e., Plaintiff's efforts to collect money from Defendant. Furthermore, no third parties are involved in this suit. For these reasons, the collateral litigation exception does not apply. Finally, this is not a case involving the equity jurisdiction of the trial court. As explained earlier, the case was decided upon common law fraud principles. As such, the equitable concept of "balanc[ing] bene-

fits" is not implicated. For the foregoing reasons, the fees awarded in this case cannot stand.

In so finding, we do not ignore the cases cited by Plaintiff in support of upholding the damages awarded. However, we find the cases distinguishable. For instance, although *Miller v. Higgins*, 452 S.W.2d 121 (Mo.1970), affirmed a judgment in a fraud case which included both attorney fees and accountant fees as part of the award, such fees were not incurred as part of the defrauded party's effort to litigate his fraud case. Rather, the fees in *Miller* fell in the category of "special damages," which were incurred in an effort by Miller to *"mitigate damages and avoid future losses." Id.* at 125 (emphasis added). Specifically, the recoverable fees in *Miller* were those expended by the plaintiff in getting a new loan on real estate he purchased from the defendant. By getting the new loan, the plaintiff was relieved of rent controls imposed by the original lienholder; consequently, the new loan reduced the size of the defendant's damage liability to the plaintiff. "A defrauded party may recover special damages necessarily incurred solely by reason of the fraud." *Id.* at 125. Here, no evidence exists to support a finding that the attorney fees or accountant fees fell in the category of "special damages." Defendant had already inflicted the harm on Plaintiff when Plaintiff hired the lawyer and accountants, and could inflict no more because she had previously quit. Here, the lawyer's and accountants' jobs were to learn exactly how much harm Defendant inflicted and try to recover the losses, not mitigate or avoid future losses. The *Miller* case does not aid Plaintiff.

Plaintiff also cites, in support of its argument, *McCall v. Jim Lynch Cadillac, Inc.*, 791 S.W.2d 456 (Mo.App.1990). This case cites *Miller* with approval but the attorney fees were not awarded in the case. Thus, *McCall* provides no assistance to Plaintiff.

We remain convinced that the "American rule" attends here and Plaintiff must bear the expenses needed to make its case. *See Beard*, 636 S.W.2d at 331[2]. Points I and II have merit.

The judgment is affirmed to the extent that it awarded Plaintiff damages against Defendant of $156,174.04 with Defendant to receive credit for $23,793 for money she previously paid; the judgment is reversed to the extent it awarded Plaintiff damages of $8,900 for accounting fees and $2,500 for attorney fees expended. The case is remanded with directions for the trial court to enter an amended judgment consistent with this opinion.

PARRISH, P.J., CONCURS.

MONTGOMERY, J., CONCURS.