201 F.Supp.2d 967 (2001)
Bijan KHAZAI, Plaintiff,
v.
WATLOW ELECTRIC MANUFACTURING COMPANY and Watlow Missouri, Inc., Defendants.
No. 4:98-CV-244 DDN.
United States District Court, E.D. Missouri, Eastern Division.
June 1, 2001.
*968 Michael Armin Wolff, Charles A. Seigel, III, Seigel and Wolff, P.C., St. Louis, MO, for Plaintiff.
Michael A. Vitale, Herzog and Crebs, St. Louis, MO, Joan M. Swartz, St. Louis, MO, for Defendants.

MEMORANDUM OPINION
NOCE, United States Magistrate Judge.
This action is before the court, following a jury trial, for disposition of non-jury claims and the entry of judgment. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge 28 U.S.C. § 636(c).
This action arose out of the employment of plaintiff Bijan Khazai by defendants Watlow Electric Manufacturing Company and Watlow Missouri, Inc. (collectively Watlow). Plaintiff alleged that one faction of the family that owned the defendants developed a plan to take over the business and endeavored to hire foreign-born research scientist who would not interfere with the take-over plan. Plaintiff was hired as a research scientist in January 1995 and was terminated in August 1997. At the heart of the parties' dispute are plaintiff's allegations that he is the rightful owner of certain inventions relating to the self-regulating polymer composite heater and the self-regulating conducting ceramic heater. Defendants allege that they own these inventions and that plaintiff's relationship to them came about only through his employment with defendants.
Plaintiff alleged seven claims for relief. In Counts I and II, he alleged that defendants discriminated against him on account of his Iranian national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and in violation of the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. § 213.010; plaintiff alleged that defendants hired him to appropriate his scientific knowledge and intellectual property and then to fire him. In Counts III and IV he alleged that defendants made intentional and negligent misrepresentations to induce him to accept his employment with defendants. In *969 Counts V and VI plaintiff alleged claims of promissory estoppel and breach of contract, based on the representations alleged in Counts III and IV. And in Count VII plaintiff alleged that defendants misappropriated his trade secrets. Plaintiff seeks monetary damages, costs, and attorneys' fees.
Defendants alleged three counterclaims. Count I seeks a declaratory judgment that plaintiff has no lawful interest in the heater inventions. In Count II defendants seek specific performance of the written employment agreement provision that plaintiff timely execute any and all documents necessary to vest title to the inventions in Watlow Missouri, Inc. In Count III defendants seek an injunction prohibiting plaintiff from disclosing to any unauthorized person any information relating to the inventions. On these claims defendants also seek their costs, expenses, and attorneys' fees.
Plaintiff's Counts I through VI were submitted to a jury. The jury returned its verdicts on Counts I, II, III, IV, and VI for the defendants. On Count V the jury found for plaintiff on his claim of promissory estoppel, that defendants promised plaintiff that, in the event they terminated his employment, they would pay him one year's salary as a severance pay. The jury awarded plaintiff $96,000 in compensatory damages on this claim. See Verdict D, filed July 24, 2000 (Doc. No. 106). By Memorandum and Order, filed April 18, 2001, the court denied defendants' motion to amend the jury's verdict and determined that plaintiff was entitled to simple prejudgment interest of nine per cent per annum under Mo.Rev.Stat. § 408.020.
Plaintiff's Count VII claim and defendants' counterclaims were severed for nonjury findings and disposition. After considering the record of this action, the Court makes the following findings of fact and conclusions of law on these claims:

FACTS
1. Plaintiff Bijan Khazai, a native of Iran, resides in St. Louis County, Missouri. Defendants Watlow Electric Manufacturing Company and Watlow Missouri, Inc., are Missouri corporations with their principal places of business in St. Louis County, Missouri.
2. Defendants manufacture industrial heaters, heater sensors, and heater controllers in plants located in the United States and five other countries. Defendants employ approximately 2500 persons and have annual sales of approximately $250 million.
3. In 1994, defendants established in their Fenton, Missouri, facility a central corporate research and development center for all of their manufacturing plants. In July 1994 Lou Steinhauser, defendants' manager of corporate research and development, submitted a written report proposing major research projects to be undertaken. Among was research on ceramic and positive temperature co-efficient heaters. Defendants wanted to hire an engineer with experience in ceramics, preferably someone with a related Ph.D.
4. In August 1994, defendants began interviewing candidates for the position of Senior Research Scientist. Plaintiff was one of the candidates selected for a personal interview with Steinhauser. Plaintiff had a background in advanced electronic materials. In 1981, he received a Ph.D. in solid state inorganic chemistry. From 1983 to 1993, he worked for Dow Chemical Company as a research leader. Among his accomplishments he developed qualifications in the synthesis and analysis of inorganic and chemical materials. At Dow, plaintiff received special recognition awards and in 1990 he was named Inventor *970 of the Year. Clearly, he had knowledge and experience that would benefit defendants.
5. In their conversations, which led to plaintiff's employment with defendants, plaintiff and Steinhauser discussed the work that plaintiff would do for defendants. They did not discuss the expected length of his employment or any profit sharing program. Steinhauser told plaintiff that the defendants would provide severance pay of one year's salary, which included benefits equaling 20 per cent of the base salary. Ultimately, plaintiff agreed to move his family to St. Louis and to work for defendants at the agreed upon compensation plus plaintiff's relocation expenses.
6. In December 1994, prior beginning his employment with defendants, plaintiff entered into a written employment agreement with defendants. This employment agreement provided in pertinent part as follows:
5. It is expressly recognized, acknowledged and agreed by Employee that during the period of employment by Watlow, Employee will be brought into contact with Watlow's confidential methods of operation, information and trade secrets, including, but not limited to, know-how, experimental data, inventions, discoveries, improvements, designs, processes, methods, systems, developments, ideas, suggestions, devices, product costs, customer lists, data, documents, prints, drawings, patents, licenses, memoranda and other information about its operations and business (as presently conducted and as proposed to be conducted) of a confidential nature (hereinafter collectively referred to as "Confidential Information and/or Trade Secrets"). Employee agrees not to disclose during his/her employment or at any time thereafter, or to reveal, directly or indirectly, to any unauthorized person, within or outside of Watlow, or use any of the Confidential Information and/or Trade Secrets of Watlow which shall be acquired by or disclosed to Employee while an employee of Watlow except under the direction of Watlow or with its prior written consent. In addition to the foregoing, if Employee's employment shall terminate, for any reason, Employee will not take with him/her any Confidential Information and/or Trade Secrets without first obtaining Watlow's written consent.
6. Employee promises and agrees that he/she will disclose fully and reveal promptly to Watlow any and all inventions, discoveries, designs, improvements, ideas, and the like (hereinafter collectively referred to as "Inventions"), whether patentable or not, and whether conceived by employee, solely or in conjunction with other persons, at any time during his/her employment by Watlow, and for a period of 18 months thereafter where such discoveries (i) relate to the business of Watlow, or (ii) were developed at Watlow's expense or on its premises, or (iii) resulted directly or indirectly from such employment by Watlow, or (iv) related to articles or products made, sold used or bought by Watlow, or (v) were being considered for design, development, sale, purchase or use by Watlow during such employment by Watlow. All such inventions and rights associated therewith shall be the sole and exclusive property of Watlow.
Employee agrees to promptly execute any documents that may be necessary to vest title in Watlow to any such Inventions and any patents which may be applied for or issued covering the same, in Watlow, in all countries, without additional cost to Watlow. However, Watlow *971 shall reimburse Employee for all out of pocket expenses incurred in connection with the execution of any documents necessary to vest title in Watlow. Employee further agrees to turn over to Watlow any Confidential Information and/or Trade Secrets, memoranda, schematics, drawings and data accumulated or made in connection with any of the foregoing.
7. During the period of Employee's employment with Watlow and for a period of eighteen (18) months after the date of termination of such employment for any reason, Employee agrees that he/she will not directly or indirectly, within the territory served by Watlow at any time during the eighteen (18) month period preceding termination of employment, engage in any business or conduct in competition with Watlow whether as an owner, partner, joint venturer, consultant, stockholder, lender, employee, agent, sales person, officer, director, or in any other capacity, provided however, employee may own stock of not more than 5% in any publicly traded company that is in competition with Watlow.
Paragraph 8 of the employment agreement provided inter alia that, in the event of a breach of the agreement by plaintiff, plaintiff is to reimburse defendants for the costs, expenses and reasonable attorney's fees they incurred in enforcing the agreement. See Pl.Exhs. 18 and 21; Def.Exh. Z. Plaintiff thus became employed by defendants as a research scientist at the Watlow Heater Technology Center beginning January 9, 1995.
7. In his employment by Watlow, plaintiff worked on a number of inventions which related to the business of Watlow. These inventions were developed at Watlow's expense and on its premises. The work on these projects was part of plaintiff's employment by defendants and related to heaters made and sold by defendants during plaintiff's employment by Watlow. These inventions included the self-regulating polymer composite heater and the self-regulating conducting ceramic heater, the technology for which was mentioned in the 1994 Steinhauser report. Plaintiff and defendants did not agree to develop such inventions, other than in the scope of their written employment agreement.
8. During his employment with defendants, to develop products for defendants, plaintiff engaged in joint research projects with universities. Plaintiff worked with Rutgers University on the conducting ceramics heater invention and with Northwestern University on the polymer composite heater invention. The agreements with these universities were executed in the name of defendants who were responsible for funding the cost of this research.
9. In January 1997, plaintiff determined that the heater inventions were at a stage that patent opinions could be obtained on behalf of defendants. Plaintiff contacted the law firm of Herzog, Crebs & McGhee and requested that patent searches and opinions be prepared. On February 14, 1997, Herzog, Crebs & McGhee provided plaintiff with a favorable patent opinion on the polymer composite heater, and on February 25, 1997, provided plaintiff with a favorable patent opinion on the conducting ceramics heater. Plaintiff then instructed Herzog, Crebs & McGhee to prepare patent applications on these inventions.
10. On May 29, 1997, Herzog, Crebs & McGhee forwarded to plaintiff a draft of the patent application for the polymer composite heater. In this letter, Herzog, Crebs & McGhee requested that plaintiff provide information on whether and to whom the patent needed to be assigned. On July 28, 1997, Herzog, Crebs & McGhee forwarded to plaintiff for his signature *972 a declaration and power of attorney under which plaintiff appointed Herzog, Crebs & McGhee to represent him before the United States Patent and Trademark Office.
11. On July 29, 1997, Herzog, Crebs & McGhee filed the patent application for the polymer composite heater without any assignment of rights by plaintiff to defendants.
12. On July 30, 1997, Herzog, Crebs & McGhee requested that plaintiff execute an assignment of his interests in the polymer composite heater and the conducting ceramics heater to defendants. Plaintiff advised Herzog, Crebs & McGhee that he would not do so until he and defendants had agreed on terms regarding the Watlow Joint Venture Capital Fund.
13. On August 1, 1997, defendants terminated plaintiff's employment. Following his termination, plaintiff never returned to his work area to retrieve his personal effects. When he was terminated, plaintiff was being paid a base salary of $65,000.
14. On May 11, 1999, Patent No. 08/902, 122 was issued by the United States Patent and Trademark Office for the polymer composite heater. The inventors identified in the patent application were plaintiff and George M. Nichols, of Northwestern University. The patent was issued in the names of plaintiff and Northwestern University. On November 17, 1998, Nichols had assigned his interest in this patent to his employer, Northwestern University. No patent application has been filed for the conducting ceramic heater. After his termination, defendants have not further developed the ceramic heater product.
15. Following the termination of plaintiff's employment, defendants demanded that plaintiff execute assignments of his interests in the polymer heater and the ceramic heater to them, as he had agreed to do in the employment agreement. To date, despite the defendants' demand, plaintiff has failed and refused to execute such assignments.
16. In enforcing the terms of the employment agreement, defendants have expended costs and attorneys' fees, first in connection with the state court action and then in the prosecution of the counterclaim in the instant action.

DISCUSSION
The court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367(a) (supplemental jurisdiction).

Plaintiff's Count VII misappropriation claim.
Count VII of plaintiff's complaint asserts a claim for misappropriation of trade secrets under Missouri law. He alleges that defendants wrongfully induced him to disclose, during the course of his employment with defendants, the electric resistance heater invention ideas he had developed before he went to work for defendants. He alleged that these ideas are trade secrets under the Missouri Uniform Trade Secrets Act, Mo.Rev.Stat. §§ 417.450-417.467. There is liability for misappropriation of a trade secret, if the trade secret was acquired by improper means, such as misrepresentation. Mo. Rev.Stat. §§ 417.457, 417.453.
Complementing plaintiff's allegations that the technical and scientific ideas about electrical resistance heaters he brought to defendants are trade secrets are defendants' allegations, admitted by plaintiff in his answer to the counterclaim, that the technical information and data about the heaters, that were developed during plaintiff's employment with defendants, also are trade secrets.
*973 Information is a trade secret if it constitutes technical or nontechnical data, a formula, compilation, program, device, or process that derives independent economic value from not being generally known to or readily ascertainable by other persons who can obtain economic value from its disclosure and use and that is the subject of reasonable efforts to maintain its secrecy. Id. at § 417.453(4); see Lyn-Flex West, Inc. v. Dieckhaus, 24 S.W.3d 693, 698-99 (Mo.Ct.App.1999).
The information regarding the polymer composite heater and the conducting ceramics heater at issue in this case are trade secrets, because they constitute technical information that was not generally known or readily ascertainable by others. This was demonstrated, in part, by the issuance of a patent for the polymer composite heater and was the subject of reasonable efforts to maintain its secrecy.
Contrary to plaintiff's arguments, the court does not find that defendants misappropriated plaintiff's scientific knowledge, which he acquired before his employment with defendants. Rather, plaintiff agreed to and did use and develop scientific information and data that he brought into his employment with defendants. He used this information in his employment with defendants for which he received agreed upon compensation, until his termination. Cf. Id. at 699 (defendant misappropriated employer's trade secret price book by using it without employer's consent).
For these reasons, defendants are entitled to judgment on plaintiff's Count VII claim for misappropriation of trade secrets.

Defendants' counterclaims.
In their three counterclaims, defendants seek a declaration by the court that plaintiff has no lawful interest in the self-regulating polymer composite heater or the self-regulating conducting ceramic heater inventions (Count I); specific performance of the written employment agreement provision that requires plaintiff to execute all documents that vest title in the self-regulating polymer composite heater and the self-regulating conducting ceramic heater inventions in defendants (Count II); and an order enjoining plaintiff from disclosing to any unauthorized person any information about the heaters (Count III).

Count I counterclaim.
Defendants are entitled to a declaratory judgment on their counterclaim Count I. The subject matter of the self-regulating polymer composite heater and of the self-regulating conducting ceramic heater was mentioned in Steinhauser's written August 1994 proposal for the creation of a separate research and development facility, before defendants employed plaintiff. Defendants had researched similar products before plaintiff's employment with them. Plaintiff's work on these heater projects was performed in the course of his employment with defendants. Paragraph 6 of the parties' written employment agreement, quoted above, provided that the data and information that resulted from the plaintiff's employment with defendants were the property of defendants. Tlapek v. Chevron Oil Company, 407 F.2d 1129, 1134 (8th Cir.1969) (a unique theory conceived by an employee during and in connection with his employment was confidential information the employee was not free to use for his private gain).
The court concludes that plaintiff has no lawful interest in the self-regulating polymer composite heater or the self-regulating conducting ceramic heater inventions. An appropriate declaratory judgment will be entered on defendants' counterclaim Count I.

Count II counterclaim.
Likewise, defendants are entitled to judgment on their counterclaim Count *974 II. They seek specific performance of the written employment agreement provision that requires plaintiff to execute all documents that vest title in the self-regulating polymer composite heater and the self-regulating conducting ceramic heater inventions in defendants.
When plaintiff went to work for defendants, by paragraph 6 of the employment agreement, he promised to "promptly execute any documents that may be necessary to vest title in Watlow to any [inventions, discoveries, designs, improvements, ideas and the like] and any patents which may be applied for or issued covering the same, in Watlow, in all countries, without additional cost to Watlow." The results of plaintiff's and defendants' development of the self-regulating polymer composite heater and the self-regulating conducting ceramic heater, including the patent on the polymer heater, are covered by the written employment agreement and plaintiff is obligated to execute the documents necessary to vest title to them in defendants.
Plaintiff currently has partial, legal, ownership of the patent issued by the United States Patent and Trademark Office for the polymer composite heater. The Patent and Trademark Office recognized plaintiff as a part owner of the patent only because defendants, not being the actual inventors, could not have filed the patent application in their corporate names. See 35 U.S.C. § 111. Defendants are entitled to the patented and patentable interests in the heaters as a matter of law pursuant to the employment agreement between them and plaintiff. Baxter International, Inc. v. Morris, 976 F.2d 1189, 1193 (8th Cir.1992); A.B. Chance Company v. Schmidt, 719 S.W.2d 854, 857, 859 (Mo.Ct.App.1986) (as a general rule, Missouri courts will grant equitable protection for an employer's interests in trade secrets; whether or not an agreement existed, the employer is entitled the trade secrets imparted to an employee during a confidential relationship for which an injunction may issue).
An injunction is issued herewith compelling plaintiff to execute the appropriate documents, to be proffered by defendants.

Count III counterclaim.
Defendants seek under their Count III counterclaim an order enjoining plaintiff from disclosing to any unauthorized person any information about the heaters. In its counterclaim, defendant Watlow Missouri alleges that it is the owner the owner of the heater inventions because of the employment agreement with plaintiff. As set forth above, the court agrees.
Under Mo.Rev.Stat. § 417.455.1, actual or threatened misappropriation may be enjoined. "Misappropriation" includes the wrongful disclosure of a trade secret. Mo.Rev.Stat. § 417.453(2). However, before the court will issue such an injunction, the subject matter of the information to be protected must be specifically described and the court must place reasonable limitations, such as to time and physical territory, upon the actions or prohibitions imposed upon the plaintiff. Such injunctive relief must not be any greater than that which is required to protect the defendant's interests and there must be a real apprehension that, and a sufficient probability that, wrongful disclosure by plaintiff of defendants' trade secrets will occur. See Baxter International, Inc., 976 F.2d at 1194. Plaintiff's refusal to execute the documents required by his employment agreement and his claim to ownership of the heater trade secrets are sufficient to show a threat of misappropriation. A.B. Chance Company, 719 S.W.2d at 860. Therefore, the court will consider defendants' entitlement to an order prohibiting plaintiff from disclosing the trade secret information to "any unauthorized person."
*975 Of special importance is the length of time during which plaintiff should be enjoined from disclosing the subject trade secret information. Under Missouri law, the beginning point is the date plaintiff was terminated. Superior Gearbox Company v. Edwards, 869 S.W.2d 239, 246-47 (Mo.Ct.App.1993); see also AEE-EMF, Inc. v. Passmore, 906 S.W.2d 714, 724 (Mo.Ct.App.1995). In a case
involving the misappropriation of trade secrets, Missouri courts employ the so-called "head start" rule .... Under that rule, Defendants are entitled to present evidence of how long it would have taken them to reproduce [the employer's trade secrets], absent the misappropriation....
The head start rule is based on the premise that, by misappropriating trade secrets, [employees] were able to cut short the time it would otherwise have taken them to reproduce [the employer's trade secrets].... That does not mean, however, that [employees] should be enjoined for unreasonable length of time.
Superior Gearbox Company, 869 S.W.2d at 250-51 (citations omitted); see also A.B. Chance Company, 719 S.W.2d at 859.
In the case at bar, paragraph 5 prohibits plaintiff from disclosing to "any unauthorized person" any "Confidential Information and/or Trade Secrets" "during his/her employment or at any time thereafter." Clearly, such an open-ended time period is unreasonable and unenforceable. Cf., Superior Gearbox Company, 869 S.W.2d at 248 ("10-year injunction against competition is unreasonably long").
The court finds in the parties' written employment agreement substantial evidence of the appropriate length of time for limiting plaintiff from disclosing the trade secret information he learned while employed with defendants. While paragraph 5 is without limitation on the time period during which plaintiff may not disclose such information, paragraph 6 indicates that the parties anticipated that plaintiff would likely communicate such information after leaving defendants' employment. That provision, quoted above, provides that for a period of eighteen months after leaving defendants, plaintiff would disclose to defendants such information used by plaintiff, by himself or with other persons. That provision made the resulting products ("inventions and rights associated therewith") "the sole and exclusive property of Watlow." In the circumstances of this case, given the facts that no patent on the conducting ceramic heater has been applied for and that defendants have not further developed the ceramic heater invention, defendants' interests in the trade secret information known by plaintiff have been adequately protected by plaintiff's non-disclosure during the eighteen month period following his termination from employment. That period having expired, defendants are not now entitled to injunctive relief.
Judgment on the Count III counterclaim will be for plaintiff.

Costs, expenses, attorneys' fees.
Defendants seeks an award of costs, expenses, and attorneys' fees on the claims on which they have prevailed. Regarding the claims on which a plaintiff does not prevail, a federal district court has the inherent power to award a reasonable attorney's fee to a prevailing defendant, if the plaintiff's claim was frivolous or without foundation. Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); American Family Life Assurance Co. Columbus v. *976 Teasdale, 733 F.2d 559, 569 (8th Cir.1984). See also Mo.Rev.Stat. § 213.111.2.
The claim upon which this court's subject matter jurisdiction is founded was plaintiff's Count I claim that defendants discriminated against him in his employment on account of his Iranian national origin, in violation of 42 U.S.C. § 2000e-2 (a). Although the jury found for defendants on plaintiff's counts I-IV, and count VI and the court will enter judgment in favor of defendant on count VII, the court does not conclude that plaintiff's claims were entirely frivolous or without any foundation, to support an award of fees and cost to defendants.
Regarding Counts I and II of defendants' counterclaim, under paragraph 8 of the written employment agreement, plaintiff agreed to pay all of defendants' costs, expenses and reasonable attorneys' fees incurred in enforcing the agreement. As a result of plaintiff's failure and refusal to comply with that part of paragraph 6 of the written employment agreement that required plaintiff to execute the necessary documents vesting in defendants ownership rights in the subject heater technology, defendants incurred such expenses. The determination of defendants' Counterclaim Count I was integral to the determination of Count II's claim for injunctive relief. Plaintiff is obligated by the written employment agreement to reimburse defendants for their cost, expenses and reasonable attorneys' fees for enforcing that part of the agreement.
Plaintiff may not recover his attorneys' fees for prevailing on Count V of his complaint or on defendants' Count III counterclaim. Harris v. Union Electric Co., 766 S.W.2d 80, 89(Mo.) (en banc), cert. denied, 492 U.S. 919, 109 S.Ct. 3245, 106 L.Ed.2d 592 (1989) (general rule in Missouri is that attorneys' fees are not awarded to the successful litigant unless so provided by contract, statute, or where equity may require); Lett v. City of St. Louis, 24 S.W.3d 157, 162 (Mo.Ct.App.2000) (attorneys' fees may only be awarded to the successful litigant where they are provided by statute, contract, or in very unusual circumstances where equity demands a balancing of the benefits, or where attorneys' fees are incurred because of involvement in collateral litigation); Memco, Inc. v. Chronister, 27 S.W.3d 871, 877 (Mo.Ct. App.2000) ("discussing collateral litigation"). No sufficient basis has been established to support an award of fees to the plaintiff.

Conclusion
For the reasons set forth above, the court will enter judgement for plaintiff on his Count V claim; for defendants on plaintiff's claims in Counts I, II, III, IV, VI, and VII; for plaintiff on defendants' Count III counterclaim. Defendants' costs, expenses, and attorneys' fees will be awarded on defendants' counterclaim Counts I and II.